## MAURICE M. FILISTER AND ANOTHER v. CITY OF MINNEAPOLIS AND OTHERS.*

133 N. W. (2d) 500.

December 31, 1964—No. 39,530.

*Appealed to U. S. Supreme Court May 7, 1965.

*Brill & Brill* and *J. E. Brill,* for appellants.

*Keith M. Stidd,* City Attorney, and *D. J. Shama,* Assistant City Attorney, for respondent city of Minneapolis.

*John R. Goetz, Kenneth W. Green,* and *Frederick W. Thomas,* for other respondents.

OTIS, JUSTICE.

Appellants seek a declaratory judgment which will free their real estate from the restrictions of a Minneapolis zoning ordinance limiting construction to single-family dwellings. The appeal is from a judgment denying them relief.

The property consists of 8⅔ acres of unimproved land located west of Ewing Avenue and lying between the Great Northern railroad tracks on the north and West 22nd Street on the south, in the city of Minneapolis. On April 3, 1924, this and the surrounding area were zoned for one- and two-family residences. The neighborhood has been developed in compliance with these restrictions. Plaintiff J. J. Bliss purchased the property at a tax sale on June 22, 1952, for a consideration of $3,800. A new comprehensive zoning ordinance was adopted July 19, 1963, permitting only single-family detached dwellings and buildings designed for educational, religious, and similar purposes. Very shortly thereafter, on August 20, 1963, Bliss granted plaintiff Maurice M. Filister an option to purchase the property for $56,000, the consideration being $1,000.

The only issue presented by the complaint is whether, because of the topography of plaintiffs' property, the zoning restrictions render it valueless and therefore constitute a confiscatory and unconstitutional taking. All but 15 or 25 percent of plaintiffs' tract is lowland. There was extensive testimony concerning the cost of preparing it for construction. It is undisputed that most of the land would require grading, filling, and piling in order to make it suitable for building.

Plaintiffs vigorously contend that the evidence requires a finding that the cost of preparing the soil for construction would equal or exceed the value of the land after it was thus improved. Hence, plaintiffs assert that the ordinance is invalid. However, they accompany their prayer for relief with an offer to confine their use to the erection of 10 apartment buildings, 2½ stories in height, containing 23 units each. Plaintiffs allege they can thereby salvage sufficient value to make the project economically feasible. They agree to submit to the jurisdiction of the district court to permit the enforcement of any decree which limits development to the purposes suggested.

A number of adjacent property owners have intervened to contest the plaintiffs' claims. It is undisputed that they have bought and built homes in reliance on the existing ordinance.

The parties have stipulated that it would be futile for plaintiffs to pursue their administrative remedies by seeking a rezoning in the manner provided by law. More than one-third of the property owners located within 100 feet of plaintiffs' tract would object to this procedure.[1]

The trial court found among other things:

"That approximately the northerly one quarter of said described property can be developed for single family usage without the necessity of piling; that approximately the southerly three quarters of said described property can be developed for single family usage with the aid of piling; that the entire property, in addition to said piling, will require some fill to bring it up to proper grade; that the total cost to the plaintiffs of lots so piled and filled would be somewhat less than the value of building lots of comparable size in the area; that the development of the plaintiffs' property into lots reasonably comparable to other lots in this area by such piling and fill is reasonably economically feasible."

As a conclusion of law the court held that the ordinance was not unreasonable, confiscatory, arbitrary, and void, and dismissed the

---

[1] Minn. St. 462.18. But see, State ex rel. Foster v. City of Minneapolis, 255 Minn. 249, 97 N. W. (2d) 273.

complaint. In an accompanying memorandum the court laid stress on the fact that plaintiffs had knowledge of the zoning when they acquired their interests; that the consideration they paid reflected the economic problems created by the ordinance and the topography; that the surrounding area had undergone no change in character since the adoption of the ordinance; that no new restrictions were imposed after plaintiffs acquired their interest; and that the mere fact the property would have greater value if used for multiple-family buildings had no bearing on the validity of the ordinance.

1. In our opinion the ordinance must stand or fall on considerations other than plaintiffs' offer to confine their construction to the erection of the apartment units which Filister proposes to build. This is not an equitable proceeding but a statutory action for a declaratory judgment. We find no precedent for conditioning plaintiffs' rights on an agreement to carry out Filister's plans under the jurisdiction of the court. Obviously, Filister cannot be compelled to exercise his option, and neither the district court nor this court has jurisdiction to require Bliss to confine his use to that which is proposed by Filister. Plaintiffs' proposal therefore has no force or effect, and if the ordinance is found to be invalid the property may be devoted without restriction to either residential, commercial, or industrial purposes, until and unless it is validly rezoned.

2. Most of the voluminous record bears on the cost of preparing the property for construction. The testimony with respect to the value of the property in its unimproved condition is sketchy and inconclusive. Although we have some hesitation in relying on evidence of this kind, we believe the court's finding that the property has, or can economically be made to have, some substantial value is not wholly without support in the record. Mr. Bliss himself testified that before he completely understood the soil problems he thought $8,000 an acre was a reasonable value for purposes of sale. One of plaintiffs' own experts stated that in his opinion the land had a value of $2,500 an acre, although he later indicated his estimate related only to school and church uses. There was hearsay testimony, admitted without objection, that plaintiffs' real estate agent had declined an offer of

$40,000 for the property. This evidence, together with the price of $56,000 contained in Bliss' option to Filister, lends support to the court's conclusion that the real estate did have substantial value and the ordinance as applied to plaintiffs was not therefore unreasonable, confiscatory, arbitrary, or void.

3. None of the cases cited by any of the parties deals squarely with a situation where real estate has been deprived of all practical use by restrictive zoning under circumstances where surrounding property owners would be adversely affected by holding the ordinance unconstitutional. The problems of confiscation have not been considered vis-a-vis the problems of estoppel and laches. Cases cited by plaintiffs as controlling involve rezoning more restrictively after acquisition in reliance on existing ordinances;[2] zoning for residential purposes in areas unsuited for such use where no dwellings had yet been constructed on neighboring property;[3] ordinances excluding business activities in areas surrounded by commercial property;[4] rezoning of lowlands to preserve them in their natural state as a catch basin and wildlife refuge;[5] and ordinances which would make the property unusable for any purpose without the sale to, or purchase from, contiguous owners to create an adequate area on which improvements might lawfully be built.[6]

There is a division of authority on what weight is to be given to the fact a buyer has notice of a restrictive ordinance at the time of purchase, as well as on the question of what effect is to be given protracted acquiescence by an owner after adoption of such an ordinance.

---

[2]Alexander v. City of Minneapolis, 267 Minn. 155, 125 N. W. (2d) 583.

[3]Arverne Bay Const. Co. v. Thatcher, 278 N. Y. 222, 15 N. E. (2d) 587, 117 A. L. R. 1110.

[4]McGiverin v. City of Huntington Woods, 343 Mich. 413, 72 N. W. (2d) 105; Pearce v. Village of Edina, 263 Minn. 553, 118 N. W. (2d) 659.

[5]Morris County Land Imp. Co. v. Parsippany-Troy Hills Township, 40 N. J. 539, 193 A. (2d) 232.

[6]Peters & Whalen, Inc. v. Schnetzer, 194 N. Y. S. (2d) 333; see, also, Long Island Land Research Bureau v. Young, 7 Misc. (2d) 469, 159 N. Y. S. (2d) 414.

In the process of dealing with the validity of particular zoning ordinances, a number of decisions have included as a makeweight the fact that the property was purchased with actual or constructive notice of existing zoning restrictions.[7] It has been held that—

"* * * mere acquiescence, regardless of the period thereof, cannot legalize a clear usurpation of power which offends against the constitution adopted by the people."[8]

We tend to the view that knowledge of the restriction does not in itself create an estoppel if the ordinance has at the time of its adoption deprived the property of all practical use. There is no logical reason why one who purchases with notice of such an ordinance but has sufficient vision and initiative to believe that the property is illegally zoned should not have the same standing he would have enjoyed had he been the owner at the time the ordinance was adopted. Nor do we believe the amount of the consideration is entitled to any weight. There should not be one rule for a purchaser who drives a hard bargain and a different rule for one who pays a more substantial price.

Our views are well summarized in Hodge v. Luckett (Ky.) 357 S. W. (2d) 303, 305. There, as here, the property owners challenged the propriety of a zoning ordinance restricting use to residential purposes where 50 to 80 percent of the property was low and marshy. The Kentucky court succinctly noted that the time for an owner to

---

[7]Dishler, Appellant, v. Zoning Bd. of Adjustment, 414 Pa. 244, 199 A. (2d) 418; Cooper, Appellant, v. Bd. of Adjustment, 412 Pa. 429, 434, 195 A. (2d) 101, 103; Kuiken v. County of Cook, 23 Ill. (2d) 388, 394, 178 N. E. (2d) 338, 342; American Nat. Bank & Trust Co. v. City of Chicago, 30 Ill. (2d) 251, 195 N. E. (2d) 627; People ex rel. Fordham M. R. Church v. Walsh, 244 N. Y. 280, 155 N. E. 575; State ex rel. Howard v. Village of Roseville, 244 Minn. 343, 348, 70 N. W. (2d) 404, 408.

[8]Forbes v. Hubbard, 348 Ill. 166, 176, 180 N. E. 767, 771; La Salle Nat. Bank v. City of Evanston, 24 Ill. (2d) 59, 64, 179 N. E. (2d) 673, 676; Robyns v. City of Dearborn, 341 Mich. 495, 500, 67 N. W. (2d) 718, 720; Barney & Carey Co. v. Town of Milton, 324 Mass. 440, 445, 87 N. E. (2d) 9, 13. The facts in the last case are strikingly similar to those in the instant case except for the crucial element of detriment to surrounding residences, which were found to be adequately isolated.

speak is when the zoning ordinance is first adopted and not after others have invested in neighboring property in reliance on the restriction.

"* * * True, his property ought not to be forever consigned to oblivion, but if he has remained silent when he should have spoken it is no injustice to impose the condition that in order to justify a reclassification he show by clear and convincing proof that there will be no substantial resulting detriment to others."

As applied to the facts of the instant case, we believe plaintiffs and their predecessors in interest have been guilty of laches. Courts have been solicitous of the rights of surrounding property owners in passing on the propriety of zoning restrictions. In sustaining a conviction for violating an ordinance limiting the use of property to residential purposes, we have stressed the fact that neighboring homeowners had purchased property and built homes in reliance on residential zoning. State v. Modern Box Makers, Inc. 217 Minn. 41, 49, 13 N. W. (2d) 731, 735. In that case we pointed out that defendant acquired his land 13 years after the zoning ordinance was adopted and that the owner at the time of its adoption having made no objection, "defendant is in no position, equitable or otherwise, to claim that an injustice is being done it." That the construction of apartment buildings, however attractively planned, is likely to affect adversely surrounding residential dwellings is not only supported in the record but to some extent is a matter of judicial notice. The attitude of this court is reflected in State ex rel. Twin City Bldg. & Investment Co. v. Houghton, 144 Minn. 1, 19, 174 N. W. 885, 176 N. W. 159, 162, 8 A. L. R. 585, and in State ex rel. Berry v. Houghton, 164 Minn. 146, 149, 204 N. W. 569, 570, 54 A. L. R. 1012, affirmed, 273 U. S. 671, 47 S. Ct. 474, 71 L. ed. 832, where we said:

"* * * In large cities, where the lots for residences must necessarily be of the minimum size, especially where the man of small means must dwell, it is readily seen that if a home is built on such a lot and thereafter three-story apartments extending to the lot line are constructed on both sides of the home it becomes almost unlivable and its value utterly destroyed. Not only that, but the construction of such apart-

ments or other like buildings in a territory of individual homes depreciates very much the values in the whole territory."

The United States Supreme Court cited the latter case in Village of Euclid v. Ambler Realty Co. 272 U. S. 365, 47 S. Ct. 114, 71 L. ed. 303, and went on to observe (272 U. S. 394, 47 S. Ct. 120, 71 L. ed. 313):

"* * * With particular reference to apartment houses, it is pointed out that the development of detached house sections is greatly retarded by the coming of apartment houses, which has sometimes resulted in destroying the entire section for private house purposes; that in such sections very often the apartment house is a mere parasite, constructed in order to take advantage of the open spaces and attractive surroundings created by the residential character of the district. Moreover, the coming of one apartment house is followed by others, interfering by their height and bulk with the free circulation of air and monopolizing the rays of the sun which otherwise would fall upon the smaller homes, and bringing, as their necessary accompaniments, the disturbing noises incident to increased traffic and business, and the occupation, by means of moving and parked automobiles, of larger portions of the streets, thus detracting from their safety and depriving children of the privilege of quiet and open spaces for play, enjoyed by those in more favored localities,—until, finally, the residential character of the neighborhood and its desirability as a place of detached residences are utterly destroyed. Under these circumstances, apartment houses, which in a different environment would be not only entirely unobjectionable but highly desirable, come very near to being nuisances."

It is our conclusion that the disposition of this case should be governed by the principles applied in the Hodge decision. Plaintiffs and their predecessors in interest remained passive when they had a duty to act. Hence, in these proceedings it was not only incumbent on the plaintiffs to show that the ordinance was confiscatory, but they had the burden of proving by clear and convincing evidence that the relief they sought would not result in any substantial detriment to neighboring property improved in reliance on the validity of the ordinance. Here

the proof is deficient in both respects. The judgment is therefore affirmed.

Affirmed.