# RICHARD J. WESTLING AND ANOTHER v. CITY OF ST. LOUIS PARK AND OTHERS. MORRIS M. SHERMAN AND OTHERS, INTERVENORS.

170 N. W. (2d) 218.

August 15, 1969—No. 40973.

*William S. Rosen, Paul H. Ravich,* and *Dworsky, Rosen & Ravich,* for appellants.

*Kenneth W. Green* and *O'Connor, Green, Thomas, Walters & Kelly,* for defendant respondents.

*William E. Mullin,* and *Mullin, Galinson & Swirnoff,* for intervenor respondents.

OTIS, JUSTICE.

Plaintiffs are real estate developers who appeal from a judgment denying them a special permit to construct an apartment building in the city of St. Louis Park. Upon plaintiffs' petition for a writ of mandamus involving the same litigation, we held that they were not entitled to a settled case.[1] Consequently the only issue for review is whether or not the findings of fact support the conclusions of law. We hold that they do.

The court's findings may be summarized as follows: In 1944, plaintiffs acquired 40 acres of farmland which from 1947 to 1962 they developed into 64 single-family residences, and apartments containing 38 units, which were isolated from the remaining property by railroad tracks. Two parcels, containing a little more than 5 acres, remain undeveloped. It is in this area that plaintiffs wish to construct an apartment building. As zoned by ordinances adopted in 1932 and in 1949, the property in question could not be used for multiple dwellings and apartment houses. The significant ordinance was adopted in 1959. It provided that within the one-family use district, apartments could not be built except by special permit. The stated purpose of the exception was to provide a method by which land having unusual building characteristics, due to subsoil conditions or the elevation of the water table, might be more efficiently utilized.

That section of the ordinance was invoked by plaintiffs in November 1962 by an application which alleged that the 5 acres in question were low, swampy, peat-filled, and had a high water table. The proposal was to construct an apartment building consisting of no more than 24 units on a parcel containing 1.3 acres, devoting the other parcel, containing 3.8 acres, to open space. The planning commission of the city of St. Louis Park recommended that the application be denied by the city council and on December 17, 1962, it was denied.

The findings of the trial court which are deemed decisive are set forth in an appendix.

---

[1] Westling v. City of St. Louis Park, 279 Minn. 366, 157 N. W. (2d) 56.

In its conclusions of law, the court held that the order of the city council denying the special-permit request of the plaintiffs was not unreasonable, arbitrary, or void, but was in accordance with law, and that plaintiffs were estopped from complaining of the ordinances or the action of the council.

On this appeal, plaintiffs assert that the only issues for decision are the propriety and legality of the council's denial of plaintiffs' application for a special permit. They allege that the council's action was invalid because the denial was unrelated to public health, safety, and welfare. The thrust of appellants' argument is that the number of persons who would occupy the 5 acres in an apartment building would not increase the density resulting if single-family dwellings were constructed in the same area. They point out that the height of the buildings and the actual area occupied would not be enlarged by an apartment building. Nor would any increase in noise or traffic result or any greater demand for fire and police protection, public health services, sewer and water.

In support of their position, plaintiffs rely principally on three cases. Ostrand v. Village of North St. Paul, 275 Minn. 440, 147 N. W. (2d) 571; Olsen v. City of Minneapolis, 263 Minn. 1, 115 N. W. (2d) 734; Golden v. City of St. Louis Park, 266 Minn. 46, 122 N. W. (2d) 570. The fallacy of plaintiffs' contention, as we view it, is the fact that the special-permit provisions of St. Louis Park Ordinance § 6:177.1 have the legal effect of a variance.[2] The distinction between the instant case and those which plaintiffs cite is the fact that the area here in question has always been zoned for one-family detached dwellings and not for apartment houses. Hence, the provisions for a special permit are actually variance provisions. Therefore, Olsen v. City of Minneapolis, *supra,* does not control since there the property for which a permit to erect a gasoline filling station was sought was

---

[2] St. Louis Park Ordinance § 6:177 was repealed on March 16, 1964, by Ordinance No. 911.

already zoned for commercial purposes, subject only to securing a permit. We held that the city council could not deny a permit except upon evidence that the proposed use would constitute a nuisance. In the Olsen case, the trial court found no sound basis for denying the owner the use for which his property was already zoned.

A similar result was reached in Golden v. City of St. Louis Park, *supra*. There, too, the property was zoned for the very purpose contemplated by the special permit. The court found that there was no valid basis for denying a permit for an automobile junkyard in an area surrounded by similar industrial establishments. The case which troubled the trial court, Ostrand v. Village of North St. Paul, *supra*, falls into the same category. Plaintiff there sought and was denied a permit to construct a multiple-family dwelling in an area zoned for that purpose. The trial court held that the action of the village council was arbitrary and capricious since the proposed use conformed in every respect with the provisions of the zoning ordinance. There was evidence that no potential traffic, fire, or health hazards would result.

Plaintiffs seize on the following language in the Ostrand case (275 Minn. 446, 147 N. W. [2d] 575):

"* * * The only other evidence received at the hearing were statements of property owners whose properties were adjacent to plaintiff's property to the effect that in their opinions their properties might be devalued if the permit were granted. Such argument has no legality."

Lest there be any misunderstanding by the bench and bar, we wish to make it clear that the quoted language applies only to situations where owners seek a permit to use their property for a purpose expressly permitted by the zoning ordinance, or not forbidden by the ordinance, and they have fully complied with conditions imposed for obtaining a permit. This is not such a case. The issue here presented is governed by our decision in Filister v. City of Minneapolis, 270 Minn. 53, 133 N. W. (2d) 500,

17 A. L. R. (3d) 733, certiorari denied, 382 U. S. 14, 86 S. Ct. 47, 15 L. ed. (2d) 10. That case dealt with an attempt to construct an apartment on property which was restricted to single-family dwellings. There, our decision turned on the adverse effect which the proposed use would have on adjacent property. Among other things, we said (270 Minn. 59, 133 N. W. [2d] 504):

"* * * Courts have been solicitous of the rights of surrounding property owners in passing on the propriety of zoning restrictions. * * *

*   *   *   *   *

"* * * [Plaintiffs] had the burden of proving by clear and convincing evidence that the relief they sought would not result in any substantial detriment to neighboring property improved in reliance on the validity of the ordinance."

The distinction between a variance and a special-use permit has recently been defined in Zylka v. City of Crystal, 283 Minn. 192, 195, 167 N. W. (2d) 45, 49, where we said:

"* * * Unlike a variance provision which permits particular property to be used in a manner forbidden by the ordinance by varying the terms of the ordinance, a special-use provision permits property, *within the discretion of the governing body,* to be used in a manner expressly authorized by the ordinance." (Italics supplied.)

The New Jersey Superior Court has described these distinctions in a recent case:

"* * * Variances are to be distinguished from special uses, or permits for special uses, under zoning ordinances in that variances relate to unnecessary hardship while 'special uses' relate to those authorized on a different basis, *e. g.,* substantial public service and convenience from the use and absence of danger or annoyance to nearby property owners or residents." Griggs v. Zoning Bd. of Adjustment, Princeton, 75 N. J. Super. 438, 444, 183 A. (2d) 444, 448.

In a later case, the New Jersey Supreme Court emphasized the fact that one who seeks a special permit where the proposed purpose has been legislatively sanctioned has a much lighter burden than one seeking a use variance. The court's view was summarized as follows:

"The basic difference between a use which is a special exception and one which requires a variance is that the former is legislatively *permitted* in a zone subject to controls whereas the latter is legislatively *prohibited* but may be allowed for special reasons." Verona, Inc. v. Mayor and Council of West Caldwell, 49 N. J. 274, 282, 229 A. (2d) 651, 655.

The distinction was expressed by the Supreme Court of Rhode Island in the following language:

"* * * The variance contemplates a departure from the terms of the ordinance in order to preclude confiscation of property, while the exception contemplates a permitted use when under the terms of the ordinance the prescribed conditions therefor are met." Kraemer v. Zoning Bd. of Review of City of Warwick, 98 R. I. 328, 331, 201 A. (2d) 643, 644.[3]

In the light of the broad discretion conferred on the city council to grant or deny a variance and the heavy burden of proof under which a petitioner labors, we are persuaded that the decision of the lower court dismissing the complaint is amply supported by the findings. Specifically, the court found that the values of surrounding and adjoining single-family residences owned by intervenors and others would be depreciated and thus the public welfare would suffer by granting the permit. As a further finding the court held that any hardship to plaintiffs with respect to the 5 acres here involved was "minute" compared

---

[3] The cases are collected at 2 Rathkopf, The Law of Zoning and Planning (3 ed.) c. 54, pp. 3 to 9, where the rule is stated thus: "A special exception use differs from a variance in that a variance is an authority extended to a property owner to use his property in a manner forbidden by the ordinance while a special exception allows him to put his property to a use which the ordinance expressly permits."

to the benefits previously derived by plaintiffs and did not outweigh the detriment that would be suffered by intervenors and others if a special permit were granted. Accordingly, the judgment of the district court is affirmed.

Affirmed.

APPENDIX

"That the planning commission and the city council could reasonably find from the evidence:

"(1)   That plaintiffs' application for a special permit for parcels 'A' and 'B' under Section 6:177 of the zoning ordinance met the requirements set forth in said ordinance and that the use proposed in said applications was a use suitable for such property and one which would enhance the value of such parcels and one which would not affect the public health or safety of the community to any extent greater than the construction of the permissible single-family dwellings upon such parcel, but that the values of the surrounding and adjoining single-family residences owned by intervenors and others would be depreciated had the council granted either the plaintiffs' petition for rezoning or the special permits sought and thus the public welfare would suffer.

"(2)   That the tracts represented by parcels 'A' and 'B' are a small portion of the total area of the subject property, which is in turn a small portion of the total area of the City of St. Louis Park, and to rezone parcels 'A' or 'B' to an R-4 zoning or to grant the special permits prayed for by the plaintiffs would constitute spot zoning.

"(3)   That plaintiffs have realized the benefits of sales and apartment development on the subject properties and any claimed hardship as to these small portions represented by parcels 'A' and 'B' is minute compared to the benefits previously derived by plaintiffs from the land over-all and does not outweigh the detriment that would be suffered by the intervenors and others on the subject property and other persons affected by a permitted rezoning or special permit and by the defendant City of St. Louis Park.

"That at all hearings and meetings of the planning commission and city council aforementioned, the plaintiffs were afforded full opportunity to be heard. That the planning commission and the city council in all respects did not act unreasonably, arbitrarily or capriciously but on the other hand, acted reasonably, fairly and in conformity with the sound development of the particular neighborhood involved and the

comprehensive plan of the City of St. Louis Park, all in the interest of the health, safety and welfare of the said neighborhood and said City.

"That plaintiffs expressly represented to intervenors that the neighborhood was and would continue to be developed as single-family residential property and that some intervenors relied upon the character of the neighborhood as visually observed.

"That at no time prior to the sale of property of single-family dwellings to intervenors did plaintiffs manifest any intention to build an apartment building on parcel 'A' to intervenors.

"That at the time of acquisition of their land and at all times to and including the present, the plaintiffs had no right to build an apartment or multiple dwelling upon the subject property and nothing was taken from them in this respect by the ordinance or actions of the city council subsequent to the time of acquisition. Plaintiffs acquired title to the property and owned it over the years aforementioned with full knowledge of its zoning and the uses permitted thereon, and plaintiffs by their own development of the land in question as single-family residential created their situation and the neighborhood in question as the result of their own actions and planning.

\* \* \* \* \*

"That the plaintiffs have failed to prove that the refusal of their requests for special permits or for rezoning were unreasonable, arbitrary or capricious or that they were abuses of discretion.

\* \* \* \* \*

"That the plaintiffs have failed to prove that the granting of the special permits or of the rezoning would not result in detriment to the surrounding landowners and to other landowners in the City of St. Louis Park."