## MICHAEL O'BRIEN AND OTHERS v. CITY OF ST. PAUL AND OTHERS.
## SERVICE TO BUILDERS, INC., AND ANOTHER, APPELLANTS.

173 N. W. (2d) 462.

December 26, 1969—No. 41458.

*Hyam Segell* and *Kelly, Segell & Fallon,* for appellants.

*Firestone, Fink, Krawetz, Miley, Maas & Noonan,* for respondents.

*Lewis L. Anderson* and *R. E. Low,* for A. C. E. Equipment Company, amicus curiae.

Heard before Knutson, C. J., and Nelson, Murphy, Otis, and Frank T. Gallagher, JJ.

OTIS, JUSTICE.

These proceedings seek to enjoin a rezoning of residential property which would permit the construction of apartment buildings without the consent of adjoining owners required by Minn. St. 462.357, subd. 5, and St. Paul Legislative Code, § 64.06.

The only issue is whether the statute and ordinance are constitutional. Defendants Service to Builders, Inc., and Marvin Perlman appeal from a judgment holding these provisions valid and prohibiting the proposed rezoning.

On April 17, 1967, appellant Perlman filed a petition with the city clerk of St. Paul pursuant to St. Paul Legislative Code, § 64.06, requesting that Lots 3 through 14, Block 1, and Lots 1 through 11, Block 2, Granport Addition to the city of St. Paul, be rezoned from "A" Residence District to "C" Residence District. The effect of such rezoning would be to permit construction of apartment buildings on property previously restricted to single- or two-family dwellings.

The petition was regular in all respects except that the petitioners did not obtain written consent of the owners of two-thirds of the several descriptions of real estate situated within 100 feet of the property sought to be rezoned. Both St. Paul Legislative Code, § 64.06, and the enabling act, Minn. St. 462.357, subd. 5, require the filing of such consent. Notwithstanding, the St. Paul City Council adopted an ordinance which rezoned the property as requested. The ordinance contained a waiver of the consent requirement and provided the ordinance would take effect without such consent.

Plaintiffs in this action are owners of single-family residences located in proximity to the property affected by the ordinance. They seek a declaratory judgment and injunction, asserting that the rezoning is arbitrary, capricious, unreasonable, and discriminatory, without any substantial relation to the public health, safety, morals, and general welfare, and contrary to § 462.357, subd. 5, and St. Paul Legislative Code, § 64.06. The trial court found that because of failure to file the required consents, the

council was without jurisdiction and its action in adopting the ordinance was void.

Minn. St. 462.357, subd. 5,[1] prescribes the procedure for amending the zoning ordinances of cities of the first class. Where the council does not conduct a tract study of at least 40 acres, such amendments can be made only after the written consent of the owners of two-thirds of the several descriptions of real estate situate within 100 feet of the real estate affected is filed with the city clerk. It is the claim of appellants that this constitutes an unlawful delegation of legislative authority to private persons and is therefore unconstitutional.

---

[1] "The provisions of this subdivision apply to cities of the first class. In such cities amendments to a zoning ordinance shall be made in conformance with this section but only after there shall have been filed in the office of the city clerk a written consent of the owners of two-thirds of the several descriptions of real estate situate within 100 feet of the real estate affected, and after the affirmative vote in favor thereof by a majority of the members of the governing body of any such city. The governing body of such city may, by a two-thirds vote of its members, after hearing, adopt a new zoning ordinance without such written consent whenever the planning commission or planning board of such city shall have made a survey of the whole area of the city or of an area of not less than 40 acres, within which the new ordinance or the amendments or alterations of the existing ordinance would take effect when adopted, and shall have considered whether the number of descriptions of real estate affected by such changes and alterations renders the obtaining of such written consent impractical, and such planning commission or planning board shall report in writing as to whether in its opinion the proposals of the governing body in any case are reasonably related to the overall needs of the community, to existing land use, or to a plan for future land use, and shall have conducted a public hearing on such proposed ordinance, changes or alterations, of which hearing published notice shall have been given in a daily newspaper of general circulation at least once each week for three successive weeks prior to such hearing, which notice shall state the time, place and purpose of such hearing, and shall have reported to the governing body of the city its findings and recommendations in writing."

Appellants and A. C. E. Equipment Company, in its brief amicus curiae, rely on State ex rel. Foster v. City of Minneapolis, 255 Minn. 249, 97 N. W. (2d) 273. That was an action for a writ of mandamus to compel the city to issue a permit for the construction of an office building. The land was zoned commercial at the time relators purchased it. Subsequently, two-thirds of the adjoining property owners within 100 feet of the tract filed written "consents," prompting the city to rezone the land residential. The court held the consent clause[2] invalid as applied to those facts. While the language of the opinion is broad, its effect was strictly limited on reargument. It has no application to the case now before us. There, the adjoining owners attempted to impose a more restrictive use on adjoining property, a function not contemplated by the statute and one which the owners were clearly without power to perform.

Plaintiffs' real estate has been zoned residential since 1922 and has been improved by the construction of substantial homes. The zoning which has thus applied for 47 years restricts property use to single- and two-family dwellings and to purposes which do not include erection of apartment buildings. Minn. St. 462.357, subd. 5, and St. Paul Legislative Code, § 64.06, do not vest in adjoining property owners the power to legislate or *impose* restrictions but confer the right to *waive* restrictions which have already been established by the city.

Thomas Cusack Co. v. City of Chicago, 242 U. S. 526, 37 S. Ct. 190, 61 L. ed. 472, holds that where an ordinance prohibits specified uses but permits restrictions to be modified with the consent of the persons most affected, it is valid. The United States Supreme Court there said that owners may not impose restrictions but may remove them without violating constitutional principles against the delegation of legislative power. This is precisely the situation in the case at hand.

---

[2] Minn. St. 1961, § 462.18, then in effect, contained the same consent provision as Minn. St. 462.375, subd. 5. L. 1965, c. 670, repealed § 462.18 and enacted § 462.375, subd. 5.

In Washington ex rel. Seattle Title Trust Co. v. Roberge, 278 U. S. 116, 122, 49 S. Ct. 50, 52, 73 L. ed. 210, 214, the Supreme Court held unconstitutional an ordinance which prevented construction of an old people's home without the consent of the owners of two-thirds of the adjacent property, saying:

"* * * We find nothing in the record reasonably tending to show that its construction or maintenance is liable to work any injury, inconvenience or annoyance to the community, the district or any person."

There, the court pointed out that the home would be 280 feet from the street, hidden by trees and shrubs, and would cover only 4 percent of the tract involved. In contrast to the type of building considered in the Roberge case, the court in Village of Euclid v. Ambler Realty Co. 272 U. S. 365, 394, 47 S. Ct. 114, 120, 71 L. ed. 303, 313, has characterized apartment buildings as coming "very near to being nuisances":

"* * * With particular reference to apartment houses, it is pointed out that the development of detached house sections is greatly retarded by the coming of apartment houses, which has sometimes resulted in destroying the entire section for private house purposes; that in such sections very often the apartment house is a mere parasite, constructed in order to take advantage of the open spaces and attractive surroundings created by the residential character of the district. Moreover, the coming of one apartment house is followed by others, interfering by their height and bulk with the free circulation of air and monopolizing the rays of the sun which otherwise would fall upon the smaller homes, and bringing, as their necessary accompaniments, the disturbing noises incident to increased traffic and business, and the occupation, by means of moving and parked automobiles, of larger portions of the streets, thus detracting from their safety and depriving children of the privilege of quiet and open spaces for play, enjoyed by those in more favored localities,—until, finally, the residential character of the neighborhood and its de-

sirability as a place of detached residences are utterly destroyed. Under these circumstances, apartment houses, which in a different environment would be not only entirely unobjectionable but highly desirable, come very near to being nuisances."

The rules enunciated by the authorities and by a number of courts with respect to consent provisions approve their application in cases such as that under consideration. 1 Rathkopf, The Law of Zoning and Planning, c. 29, states that such a consent provision does not involve a delegation of legislative power but may be construed as a waiver by adjoining owners of a provision of the prohibition enacted for their benefit.

1 Yokley, Zoning Law and Practice (3 ed.) § 7-13, p. 358, describes the rule as follows:

"* * * [I]f the action of property owners has, of itself, the effect of legislation, such action constitutes an unlawful delegation of legislative power. If, on the other hand, the consents are used for no purpose other than to *waive* a restriction that has already been created by legislative authority and which creation made provision for such a waiver, such consents are generally held to be constitutional."

The same principle is expressed in 2 Metzenbaum, Law of Zoning (2 ed.) c. X-b-1, p. 1067, thus:

"If the action of the property owners has the effect of *legislation*—if it *creates* the restriction or prohibition, then it is deemed to fall within the forbidden 'delegation of legislative power.'

"On the other hand, if the consents are used for no greater purpose than to *waive* or *modify* a restriction which the *legislative* authority itself *has* lawfully *created* and in which creation it has made provisions for waiver or modification, then such consents are generally regarded as being within constitutional limitations."

The validity of similar ordinances has been upheld in Cady v. City of Detroit, 289 Mich. 499, 286 N. W. 805, and in Huff v.

City of Des Moines, 244 Iowa 89, 56 N. W. (2d) 54. Although dealing with property rezoned for trailer camps, these cases held that consent provisions were not a delegation of legislative power if their only purpose was to waive a restriction which the city itself had created.

Three other jurisdictions have squarely upheld the validity of consent ordinances. Inspector of Buildings of Lowell v. Stoklosa, 250 Mass. 52, 145 N. E. 262; Cross v. Bilett, 122 Colo. 278, 221 P. (2d) 923; Robwood Advertising Associates, Inc. v. City of Nashua, 102 N. H. 215, 153 A. (2d) 787.

The Stoklosa case was dealing with a permit to build a business establishment in a residential area. The court held (250 Mass. 62, 145 N. E. 265):

"* * * [T]here is no invalidity in a provision which enables a public board, in the exercise of its sound judgment exercised for the common good, to relax the rigidity of the bounds of those districts if and when three fourths of the landowners in the immediate neighborhood as bounded by the ordinance request."

Consent was said to be not a delegation of power but merely a condition precedent to an exercise of power by the city council.

In Cross v. Bilett, *supra*, a commercial building was proposed in a residential area where a zoning ordinance required consent of the owners of 80 percent of the adjoining land. The court attributed the adoption of zoning ordinances to the growth of congested urban populations, containing areas of attractive residential development, with values greatly dependent on conformity, and to the increasing public concern for quiet, safety, and beauty. In upholding the 80-percent provision, the Colorado court distinguished Roberge by noting that the ordinance in Roberge gave the adjoining property owners absolute authority to consent, leaving the legislative body with no power to withhold such permission. The court cited with approval the rule that ordinances may properly provide for a waiver of restrictions imposed by the legislative authority itself but may not permit the enactment

by adjoining owners of an ordinance prohibitory in character.

Finally, in Robwood Advertising Associates, Inc. v. City of Nashua, 102 N. H. 215, 218, 153 A. (2d) 787, 789, the Supreme Court of New Hampshire summed up the matter in this manner:

"* * * From the welter of decisions upon this subject—not all of which seem reconcilable (see anno. 21 A. L. R. [2d] 551)—the majority rule appears reasonably clear. It is that if the effect of a consent provision is to legislate it is invalid, but if it serves merely to permit the waiver of a restriction created by the legislative authority of the municipality, which has provided for such a waiver, it is upheld."

Turning to our own decisions, there is persuasive precedent for sustaining the validity of the statute. Not only has a statute containing a consent provision identical to that in Minn. St. 462.357, subd. 5, been upheld by the Federal court against the same kind of attack, but we have consistently expressed a solicitous concern for the preservation of residential areas threatened by encroachment of apartment buildings. Leighton v. City of Minneapolis (D. Minn.) 16 F. Supp. 101, held the statute there under consideration to be constitutional. That case distinguished the Roberge case by pointing out that Roberge was not, in fact, one which turned on the attempted delegation of power but actually hinged on the fact that the ordinance there in question was arbitrary and unreasonable as it applied to an old people's home. The Federal court echoed a philosophy which we have enunciated on numerous occasions (16 F. Supp. 106):

"There are cogent reasons why local owners are entitled to a voice in rezoning. They are the ones most vitally concerned; the usefulness and value of their property may be involved. When zones are established, citizens buy and improve property relying on the restrictions provided by law. They have a right to the permanency and security that the law should afford."

The court concluded that property owners have an interest in maintaining the residential character of their block, and that

such restrictions have added value to their property and consequently have been beneficial to the entire area. We cited the Leighton case with approval in State ex rel. Foster v. City of Minneapolis, 255 Minn. 249, 97 N. W. (2d) 273, observing that one who acquires real estate is entitled to rely on the zoning ordinances in effect at the time of purchase.

Whatever may be the effect of rezoning in the case at hand, the overall impact of such encroachments has been condemned in a number of our decisions, Westling v. City of St. Louis Park, 284 Minn. 351, 170 N. W. (2d) 218; Filister v. City of Minneapolis, 270 Minn. 53, 133 N. W. (2d) 500, 17 A. L. R. (3d) 733, certiorari denied, 382 U. S. 14, 86 S. Ct. 47, 15 L. ed. (2d) 10; and State ex rel. Beery v. Houghton, 164 Minn. 146, 149, 204 N. W. 569, 570, 54 A. L. R. 1012, where we said:

"* * * In large cities, where the lots for residences must necessarily be of the minimum size, especially where the man of small means must dwell, it is readily seen that if a home is built on such a lot and thereafter three-story apartments extending to the lot line are constructed on both sides of the home it becomes almost unlivable and its value utterly destroyed. Not only that, but the construction of such apartments or other like buildings in a territory of individual homes depreciates very much the values in the whole territory."

In State ex rel. Stortroen v. Lincoln, 133 Minn. 178, 181, 158 N. W. 50, 51, we commented on the familiar rule that statutes are presumed to be constitutional. The presumption was said to be strengthened with the passing of time if the statutes remain unchallenged and are acted upon. "In the face of such long acquiescence courts should hesitate before declaring the statute invalid."

In Kiges v. City of St. Paul, 240 Minn. 522, 533, 62 N. W. (2d) 363, 371, we discussed and construed an ordinance similar to § 462.357, subd. 5, but did not pass on its constitutionality. The validity of the latter has never before been questioned in this court. Under such conditions, we have held:

"* * * [The statute] should not be lightly brushed aside as unconstitutional. We think public policy, as well as the reluctance which courts should properly entertain against disturbing what has apparently been for a long time accepted as settled law, prohibit us from declaring the statute invalid at this late day." City of St. Paul v. Oakland Cemetery Assn. 134 Minn. 441, 443, 159 N. W. 962.

We concur in Judge Stewart's conclusion that where a provision first enacted 46 years ago has remained unchallenged for that length of time, during which numberless homeowners have purchased and improved property relying on the protection of the statute, it should not summarily be held invalid unless there are cogent reasons why its continued application manifestly impinges on the constitutional rights of others. Consequently, we affirm.

Affirmed.