## C. G. REIN COMPANY AND ANOTHER v. ROBERT BJORNDAHL AND OTHERS.

189 N. W. (2d) 162.

July 9, 1971—No. 42285.

*Gray, Gray & Barghini* and *Milton Gray,* for appellants.

*Vincent P. Courtney* and *Stringer, Donnelly, Allen & Sharood,* for respondents.

Heard before Knutson, C. J., and Nelson, Otis, Peterson, and Frank T. Gallagher, JJ.

PER CURIAM.

Appellants, C. G. Rein Company and C. G. Rein Development Company, seek by mandamus to compel the village of Arden Hills to grant C. G. Rein Company a special-use permit for the purpose of constructing an apartment complex, consisting of 130 units in 7 buildings, in an area zoned for one-family residences. On the recommendation of its planning commission, the village council refused to grant the permit. The district court held that appellants were not entitled to relief, and this appeal followed. We affirm.

C. G. Rein Company has, since the year 1954, owned a tract of land measuring 1,000 feet by 1,350 feet in the southwest corner of the village, bordering Cleveland Avenue. From the time of its acquisition, almost the entire area has been zoned for one-family residences. The village zoning ordinance provides that the council may grant a special-use permit for residences housing two or more families if it determines that the particular use contemplated meets the following requirements:

"* * * In general, the Council may grant a special use permit when the Council determines that the proposed use will not be detrimental to the health, safety, convenience, morals, or general welfare of the community nor will the granting of the permit cause serious traffic

congestion or hazards, nor will said granting seriously depreciate surrounding property values, and that said proposed use is in harmony with the general purpose and intent of this Ordinance and the Comprehensive Plan.

\* \* \* \* \*

"In considering the special use permit the Council shall consider the advice and recommendations of the Planning Commission and the effect of the proposed use upon the health, safety, morals and general welfare of occupants of surrounding land, existing and anticipated traffic conditions, including parking facilities on adjacent streets and land, and the effect on values of property in the surrounding area, and the effect of the proposed use on the Comprehensive Plan."

Appellants predicate their claim for relief on the assumption the ordinance confers on the council only the ministerial function of determining whether the applicant has complied with specified standards for obtaining a special-use permit prescribed by the ordinance. In support of that position, appellants rely on Ostrand v. Village of North St. Paul, 275 Minn. 440, 441, 147 N. W. (2d) 571, 572. However, we are of the opinion the council's function is a legislative one and therefore our decision is governed by Westling v. City of St. Louis Park, 284 Minn. 351, 170 N. W. (2d) 218.

The key issue is whether, as appellants contend, the zoning ordinance permits both one-family residences and multiple-family apartments and retains in the council only limited supervisory responsibility for enforcing the conditions under which apartment buildings may be constructed. We do not read the ordinance in this manner. Clearly, by its terms it provides only for one-family residences in this area. The basic zoning ordinance makes no mention whatever of multiple-family dwellings. That such omission was by design is borne out by the housing policy adopted by the village in 1966. That document begins with the statement that "Arden Hills is to be considered a 'Village of Homes' in the sense that urban planning will be designed to promote high standards for residential development and help to assure the best possible living environment." The policy document further provides:

"In general, areas suitable for single-family home construction should not be considered appropriate for apartment developments. In some specific cases, however, land suitable for single-family homes may be more suited to apartment usage. It shall be the responsibility of the land owner or his duly authorized agents to demonstrate that apartment usage of such land is equal to or better than single-family use.

"In all cases, apartment plan proposals will be evaluated with respect

to their potential effect upon adjacent and nearby development and their effect upon the general public welfare of the entire Village and adjacent communities."

As we indicated in Westling, appellants have a "heavy burden of proof" (284 Minn. 356, 170 N. W. [2d] 222) to show that "apartment usage of such land is equal to or better than single-family use." We cannot hold as a matter of law that appellants have sustained that burden.

In support of their claim, appellants describe the futile efforts exerted in attempting to dispose of this property for single-family residences. To that end, appellant C. G. Rein Company made surveying and engineering tests, developed a plat, printed brochures, advertised, and attempted to interest contractors, all to no avail. Some of the reasons advanced by appellants for finding the property unsuitable for single-family residences are these: The existence of a high line across the area; current market trends and demands of the public; the location of a large pond on the property; the fact that Cleveland Avenue is a collector street with a 40-mile-per-hour speed limit and there are other collector streets and Interstate Highway No. 35 nearby; the visibility of gasoline storage tanks; and the fact that there is a complex of six apartment buildings across Cleveland Avenue in the village of New Brighton and commercial buildings within a block to the north and approximately a block to the south.

Finally, appellants assert that the denial of a special-use permit was arbitrary, capricious, and an abuse of discretion. The trial court found otherwise, and we hold there was evidence to support that finding. The difficulties appellants experienced in disposing of the area for single-family dwellings are not conclusive on the trial court or on this court. The village council has made clear its policy and purpose of leaning strongly toward a community of single-family residences. So deeply held is this philosophy that to date no multiple-family dwellings have been permitted anywhere except for housing operated by two colleges located in the village. The land here in question is bounded on all sides by single-family residences except for the complex of six apartment buildings located across Cleveland Avenue in the village of New Brighton and except for a church east of the tract. A telephone building, gas station, and food market located on Cleveland Avenue are beyond the perimeter of the property held by appellants and not adjacent to it.

Appellants complain of the fact that in denying the permit the village council was influenced, if not governed, by objections which neighbor-

ing property owners voiced. Where, as we here find, the council's power is legislative and not ministerial, the concern expressed by those affected is not only a valid consideration but in the exercise of the council's discretion it is a necessary one. In giving weight to this factor, the council acted in harmony with the views expressed in Westling, in Filister v. City of Minneapolis, 270 Minn. 53, 133 N. W. (2d) 500, certiorari denied, 382 U. S. 14, 86 S. Ct. 47, 15 L. ed. (2d) 10, and in O'Brien v. City of St. Paul, 285 Minn. 378, 173 N. W. (2d) 462.

It is not necessary to further elaborate on the law governing petitions for special-use permits since the authorities are cited and fully discussed in Westling. Accordingly, the order denying amended findings or a new trial is affirmed.

Affirmed.