**David E. LUGER, Appellant,**

v.

**CITY OF BURNSVILLE, Respondent.**

**No. 50321.**

Supreme Court of Minnesota.

July 3, 1980.

Peterson, Gray & Sheahan and Warren E. Peterson, St. Paul, for appellant.

Grannis & Grannis, Vance B. Grannis, Jr., Roger N. Knutson, and Thomas M. Scott, South St. Paul, for respondent.

Heard before ROGOSHESKE, SCOTT and WAHL, JJ., and considered and decided by the court en banc.

SCOTT, Justice.

Plaintiff David E. Luger seeks a writ of mandamus compelling the Burnsville City Council to grant a variance allowing him to construct a house on a tract of land in a Burnsville subdivision. The Dakota County District Court denied the writ, concluding that the relevant state statute and the Burnsville city ordinance authorized the city council to grant the variance subject to receipt of consent in writing from all of the abutting property owners. From that judgment the plaintiff appeals. We reverse.

The Burnsville zoning ordinance prohibits construction in a single-family residential district on a lot having less than 85 feet of frontage abutting on an existing dedicated public roadway. In 1978, plaintiff Luger purchased a 1.2-acre tract of land in such a district at a tax sale for $3,488.25. The subject tract is "land-locked"—surrounded on all sides by single-family houses—and has private access to Wood Hill Road East, a public roadway, by a 30-foot strip owned by plaintiff lying adjacent to a 15-foot easement. A house built in 1963 on property immediately southwest of plaintiff's and similarly "landlocked" currently utilizes plaintiff's private road as its only access to a public roadway.

On June 22, 1978, plaintiff filed an application with the Burnsville Zoning Administration for a variance to enable him to build on his property. On August 28, the Planning Commission recommended approval of the variance. On October 2, at a Burnsville City Council meeting at which some neighbors appeared and voiced their disapproval of plaintiff's request, the city council unanimously approved the granting of the variance, "subject to letters of approval by all abutting property owners." Plaintiff challenged the council's action by request for a writ of mandamus in district court. The court ruled that the council's action, amounting to a denial of the variance, was authorized by state and local law.

The issue before us is whether Minn.Stat. §§ 462.351–364 (1978) and the Burnsville

City Ordinance authorize the city council to condition its approval of an application for a variance on written consent from abutting landowners.

Under Minnesota law, any municipality adopting a zoning ordinance must provide a procedure by which affected persons can challenge zoning regulations. Minn.Stat. § 462.354, subd. 2 (1978). The Burnsville City Council has power under state law:

> To hear requests for variances from the literal provisions of the ordinance in instances where their strict enforcement would cause undue hardship because of circumstances unique to the individual property under consideration, and to grant such variances only when it is demonstrated that such action will be in keeping with the spirit and intent of the ordinance. * * * The board or governing body as the case may be may impose conditions in the granting of variances to insure compliance and to protect adjacent properties.

Minn.Stat. § 462.357, subd. 6(2) (1978). The Burnsville ordinance authorizes the city council to grant variances from the strict application of the zoning provisions "in cases when there are practical difficulties or particular hardships" in meeting the zoning regulations. The ordinance establishes the following guideline for the city council's ruling on applications for variances:

> (D) In considering applications for variance under this Title, the Council considers the advice and recommendations of the Planning Commission and the effect of the proposed variance upon the health, safety, and welfare of the community existing and anticipated, traffic conditions, light and air, danger of fire, risk to the public safety, and the effect on values of property in the surrounding area, and the effect of the proposed variance upon the Comprehensive Plan. If the Council shall determine that the special conditions applying to the structure or land in question are peculiar to such property or immediately adjoining property, and do not apply generally to other land or structures in the district in which said land is located, and that the granting of the application is necessary for the applicant and that granting the proposed variance will not in any way impair health, safety, comfort, morals, or in any other respect be contrary to the intent of this Title and the Comprehensive Guide Plan, and that the granting of such variance will not merely serve as a convenience to the applicant, but is necessary to alleviate demonstrable hardship or difficulty, the Council may grant such variances and impose conditions and safeguards therein.

Burnsville, Minn., Code § 10-4-4(D) (1969).

Quoting only the last clauses of the state statute and Burnsville ordinance, the city argues that the consent condition imposed by the city council is clearly authorized to "protect" adjacent properties. Plaintiff notes that a condition of written consent from abutting landowners is not specifically authorized by the statute and argues that it is invalid because not directly related to the purposes of the zoning ordinance. As this court noted in *Borgelt v. City of Minneapolis*, 271 Minn. 249, 135 N.W.2d 438 (1965), municipal corporations have no inherent powers, but only such as are expressly conferred by statute or necessarily implied from the statutory grant. In *The Alexander Co. v. City of Owatonna*, 222 Minn. 312, 24 N.W.2d 244 (1946), we upheld a municipality's denial of a special permit for construction of a public driveway over the sidewalk as a legitimate exercise of police power because that refusal bore a "substantial relation" to one objective sought to be accomplished by the zoning restrictions: public safety.

This court has never addressed the question of what weight a zoning board or city council may accord to the wishes of neighboring landowners in determining whether or not a variance may be granted. In *Northwestern College v. City of Arden Hills*, 281 N.W.2d 865 (Minn.1979), where the plaintiff college sought a "special-use permit" to build a fine arts center in a residential area, we held that the municipality's refusal to grant the permit was arbitrary and discriminatory, in light of the

fact that the municipality allowed a similar private college to build without seeking a special permit. Utilizing an equal protection analysis, we noted that the only interest apparently served by the different treatment of the two colleges was that of intervening neighbors. "Although neighborhood sentiment may be taken into consideration in any zoning decision, it may not constitute the sole basis for granting or denying a given permit." 281 N.W.2d at 869. A year earlier, in *Barton Contracting Co., Inc. v. City of Afton*, 268 N.W.2d 712 (1978), we upheld a city council's denial of a special use permit, finding some of the reasons noted by the city council valid and sufficient to justify that denial. The fact that "the citizens in the area of Afton are opposed to the use of this land [proposed]" was not, however, deemed sufficient: "Under our cases the simple fact that community members oppose a landowner using his land for a particular purpose is not a legally sufficient reason for denying him a special-use permit." 268 N.W.2d at 718.

In *Barton*, we found it significant that the plaintiff sought a special-use permit rather than a variance. A variance allows property to be used in a manner forbidden by the ordinance; a special-use permit allows a use expressly authorized by the ordinance. 268 N.W.2d at 715, n. 1. Thus, a heavy burden is imposed on an applicant for a variance to show that its grant is appropriate. Where a special permit is sought, by contrast, the burden is on the person(s) opposed to the grant to establish facts compelling its denial. *Minnetonka Congregation of Jehovah's Witnesses, Inc., v. Svee*, 303 Minn. 79, 226 N.W.2d 306 (1975). The mere "aesthetic concerns" of neighboring landowners will not rise to the level of serious health, safety, or public welfare considerations which justify denial of an application for a special-use permit. *Twin City Red Barn, Inc. v. City of St. Paul*, 291 Minn. 548, 192 N.W.2d 189 (1971). That principle was stated more strongly in an earlier case, again in the context of reversing a denial of plaintiff's application for a special permit: "It is settled that purely aesthetic considerations do not form

a sound basis for nullifying or destroying definite or valuable interests in property without compensation therefor to the owner." *Olsen v. City of Minneapolis*, 263 Minn. 1, 11, 115 N.W.2d 734, 741 (1962).

Because all of these decisions involved special-use permits, however, they do not strictly forbid a municipality from conditioning the grant of a variance on neighborhood approval or, stated another way, from denying the grant of a variance due to the lack of unanimous consent of neighboring landowners (for this is the effect of the condition imposed by the Burnsville City Council in the case before us). In *Ostrand v. Village of North St. Paul*, 275 Minn. 440, 147 N.W.2d 571 (1966), the plaintiff sought a permit to build a multiple-family dwelling in an area in which the zoning was changed from one in which such buildings could be constructed only by special permit to one in which only single-family dwellings could be built. This court agreed with the trial court that the city's denial of plaintiff's application was arbitrary and unlawful absent evidence that a health, safety, or welfare hazard would be occasioned by the proposed construction:

> [Plaintiff's application] appears to have been rejected principally because of neighborhood opposition. In denying it, the village council did not follow the recommendations of its planning commission or consider the reports of its police, fire, or health departments to the effect that no potential hazards would follow if an apartment building were constructed on plaintiff's property. The only other evidence received at the hearing were statements of property owners whose properties were adjacent to plaintiff's property to the effect that in their opinions their properties might be devalued if the permit were granted. Such argument has no legality.

275 Minn. at 446, 447, 147 N.W.2d at 575.

This language in *Ostrand*, used in a context where the petitioner sought permission to construct a building not permitted by the current zoning law, suggests disapproval of

a "neighborhood consent" requirement even for a grant of a variance. However, that language was sharply limited in a later case, *Westling v. City of St. Louis Park*, 284 Minn. 351, 170 N.W.2d 218 (1969). In *Westling*, plaintiff sought a variance in order to build apartment buildings in an area zoned for single-family residences. We stated that the arguments of neighboring landowners that grant of the variance would devalue their homes were of no consequence in *Ostrand* only because there the plaintiff sought a special-use permit and fully met his burden of proving that the proposed construction would have no adverse impact on health, safety, and the public welfare. In *Westling*, the trial court did make a finding that the public welfare and property values would be damaged by the apartment house construction, and the variance was therefore properly denied. 284 Minn. at 355, 356, 170 N.W.2d at 221. In *Westling* we relied on language in *Filister v. City of Minneapolis*, 270 Minn. 53, 133 N.W.2d 500 (1964), *cert. denied* 382 U.S. 14, 86 S.Ct. 47, 15 L.Ed.2d 10 (1965), to the effect that, regardless of their appearance, the ill effect of construction of apartment buildings in areas of residential dwellings "to some extent is a matter of judicial notice." 270 Minn. at 59, 133 N.W.2d at 504. Thus, this court "ha[s] been solicitous of the rights of surrounding property owners in passing on the propriety of zoning restrictions." *Ibid.* Still, we have not stated whether the desires of surrounding property owners may be dispositive of the question of whether a variance may be granted.

Where courts in other jurisdictions have considered this question, the conclusion generally reached is that, although the desires of neighboring landowners may have relevance in the grant or denial of a variance, they may not be dispositive. Some of the cases are collected at 82 Am.Jur.2d, *Zoning and Planning*, § 265 (1976), where the commentator concludes:

> A board of adjustment, in determining whether to grant a variance or special permit, may consider the attitude of neighboring property owners who are either protesting or offering no objection

to such administrative relief. However, such remonstrances of the landowners are by no means conclusive upon the judgment of the board, and cannot control its action, nor is the fact that there are a large number of objectors a sound basis for the denial of the relief sought, no matter how strenuous the objections. The function of the board of adjustment must be exercised on the basis of the facts adduced and upon appropriate zoning principles and objectives and is not to be based on a mere poll or plebiscite of neighbors. The merits of the application, rather than the number of protestants, should be the controlling consideration.

(Footnotes omitted.) In *Parker v. Zoning Board of Review*, 90 R.I. 166, 156 A.2d 210 (1959), for example, the court affirmed the zoning board's denial of a variance which would have allowed plaintiff to build a gas station in a residential area. In reaching that decision, the court made clear that it relied only on the board's first ground for denial—its finding that the proposed gas station did not serve public convenience and welfare. The court gave no weight to the board's second ground—"that all of the abutting residential property owners objected" to the grant. If that were the sole basis for the denial, the court said, it would reverse such an abuse of discretion without hesitation: "A mere poll of the neighboring landowners does not serve to assist the board in determining whether the exception applied for is consistent with the public convenience or welfare or whether it will tend to devaluate the neighboring property." 90 R.I. at 169, 156 A.2d at 213.

Because statutes and ordinances frequently require that a variance may be granted only where there have been findings regarding the merits of the application, a number of courts have refused to allow protests of neighboring landowners to dispose of a variance application because to do so would effect an unauthorized delegation of the zoning authority's responsibility. In *Kent v. Zoning Board of Review*, 74 R.I. 89, 58 A.2d 623 (1948), plaintiff argued that the reasons the board gave for denying his ap-

plication for a variance demonstrated that it had not exercised its discretionary authority to make a decision based on the merits of his application, but had denied it arbitrarily because some town residents objected. The court noted that the local zoning ordinance and the state enabling statute expressly provided a procedure by which variances could be granted. Therefore, the mere fact that plaintiff sought to use his property in a way forbidden by the ordinance did not justify arbitrary denial of his application for a variance. The court went on to say that the board could not properly base its denial of plaintiff's petition on "strenuous objections of residents of the town." Such objections could be heard and considered but could not "control the decision": "A poll of the neighborhood to weigh the conflicting wishes of the residents or landowners in the vicinity is not the purpose of the hearing." The board was required by statute and ordinance to exercise its independent judgment on the facts of the record. Because the record made clear that the board had abdicated that responsibility, remand was proper. 74 R.I. at 90, 58 A.2d at 624.

Similarly, in *Appeal of Lindquist*, 364 Pa. 561, 73 A.2d 378 (1950), the Pennsylvania court criticized a local zoning board's derogation of its responsibility to consider plaintiff's application for a variance. The statute required the board to exercise judicial discretion in determining whether the "special conditions" surrounding plaintiff's property warranted the grant of a variance. Nor was the board's refusal to act justified by the fact that a large number of people protested to the grant of a variance: "[A] board of adjustment does not properly exercise its discretion if it considers the number of protestants rather than the nature and quality of their objection." 364 Pa. at 565, 73 A.2d at 381. *Accord, Silverco, Inc., v. Zoning Board of Adjustment*, 379 Pa. 497, 109 A.2d 147 (1954).

In the case before us, the City of Burnsville argued before the trial court that: "Rather than approve or deny the variance request outright, the City Council chose to allow abutting property owners to decide whether a restriction enacted for their benefit should be waived." It was precisely this delegation which was criticized in *Kent* and *Lindquist* and in *Town of Westford v. Kilburn*, 131 Vt. 120, 300 A.2d 523 (1973). There, the court noted that state law placed the entire authority to grant special exceptions to the zoning law with the Board of Adjustment: "Nowhere in the enabling act is this authority delegated to adjacent property owners. Moreover, the delegation of authority by the Town of Westford to the adjacent property owners carries with it no standard to govern its use." 131 Vt. at 126, 300 A.2d at 527.

■ This case does not involve a statute or ordinance which permits or requires neighborhood consent to the grant of a variance. Such a provision in a city charter, requiring that any changes in land use agreed to by the city council be approved by a 55% vote in referendum, withstood federal constitutional attack in *City of Eastlake v. Forest City Enterprises, Inc.*, 426 U.S. 668, 96 S.Ct. 2358, 49 L.Ed.2d 132 (1976). *See also O'Brien v. City of St. Paul*, 285 Minn. 378, 173 N.W.2d 462 (1969). The court in *City of Eastlake* distinguished earlier cases in which it held that legislative power may not be delegated "to a *narrow segment* of the community," such as those whose property abutted city streets or those who owned property within 400 feet of a proposed variant land use. 426 U.S. 677, 96 S.Ct. 2364 (emphasis in original). Decision by referendum is not a delegation of power, but an exercise of power reserved by the people to themselves. Here there is no specific statutory authority to condition the grant or denial of a land-use variance or the consent of local property owners.

In *Northwestern College v. City of Arden Hills*, 281 N.W.2d 865, 869 (1979), we cited Robert Anderson's treatise to support our holding that neighborhood sentiment may not constitute the sole basis for granting or denying a special permit. Anderson draws the following conclusions about the effect of public opposition to a proposed variance:

Hearings of the board of zoning appeals usually are well attended. Not in-

frequently, opponents to a variance application overflow the hearing room. The board of zoning appeals may hear the case in a roomful of vocal partisans, and it may study a record which includes petitions signed by the persons who wish to be recorded for or against the application. The effect of this visible opposition or support can only be guessed. The propriety of deciding an application on the basis of the number of persons who express themselves for or against a certain result has, of course, been discussed by the courts.

The number of persons who are for or against the granting of a variance is neither a relevant nor a proper consideration in determining the merits of an application. One court observed that if this were not true, the result would be a government of men rather than one of law. It is improper for a board of adjustment to place weight upon the number of protestants rather than on the merits of an application. The strenuous objection of residents is not a legitimate basis for the denial of a variance. Revocation of a variance is not adequately supported when the principal reason for such action is that 1,000 persons signed a petition protesting the variance. The quality of the protest rather than the quantity of its signers must guide the discretion of the board.

R. Anderson, *American Law of Zoning* § 18.80 (2d ed. 1977) (footnotes omitted).

The Burnsville City Council is not permitted to escape the political implications of its actions by requiring every abutting property owner to consent to plaintiff's proposal to construct a home on his land. The council having voted unanimously in favor of the grant of the variance, the writ of mandamus shall issue, compelling the City of Burnsville to grant plaintiff a variance.

The writ is granted.