## IN RE APPLICATION OF MICHAEL DEDERING FOR PERMIT FOR SINGLE FAMILY DWELLING v. MARGARET R. JOHNSON.

239 N. W. 2d 913.

February 27, 1976—No. 45739.

---

[2] We note that Kremer was discharged from custody on March 13, 1974.

*Parker & Olsen* and *Lawrence E. Olsen,* for appellant.

*Dorsey, Marquart, Windhorst, West & Halladay, William J. Hempel,* and *Dennis Buratti,* for respondent Johnson.

*John F. Dablow,* County Attorney, for respondent county.

Heard before Peterson, Todd, and Scott, JJ., and considered and decided by the court en banc.

SCOTT, JUSTICE.

This is an appeal by Michael Dedering from a judgment entered pursuant to an order of the Isanti County District Court. He had appealed to the district court from a resolution of the Isanti County Board of Commissioners made on January 8, 1974, which denied his application for a variance and a conditional-use permit to allow construction of a single-family dwelling upon Lot 12, Edgewood Shores. The district court then entered judgment dismissing applicant's appeal.

Appellant is the owner of Lot 12, Edgewood Shores, in Isanti County, Minnesota. Lot 12 is located in an area zoned S-1, shorelands district, and fronts on Paul's Lake. Paul's Lake is classified as a recreation development lake by an Isanti County zoning ordinance adopted May 10, 1971. Lot 12 was found by the trial court to be approximately 85 feet in width across its shoreline dimension, 396 feet in length on its easterly dimension, 74 feet in width on its southerly dimension, and 364 feet in its westerly dimension. The lot contains 35,000 square feet. Until June 1973, Lots 12, 13, and 14 were owned by Leroy Roll, appellant's father-in-law, who platted the lots in March 1956. In June 1973, Lot 14 was conveyed to William Roll, Leroy's son, and Lot 12 to his son-in-law, Michael Dedering. Leroy Roll still owns Lot 13 and the unplatted land to the east. Respondent Margaret R. Johnson is the owner of Lots 9, 10, and 11 of Edgewood Shores, which she occupies as a year-round residence. Her home, acquired with her purchase, is on Lots 10 and 11. Lot 12 slopes toward Lot 11.

Isanti County Zoning Ordinance, § 7, subd. 5(6)(b) and (7)(b), requires for a one-family dwelling on a recreation development lake a minimum lot area of 1 acre (43,560 sq. ft.) and minimum lot width of 150 feet. When it was conveyed to him, appellant and his predecessor in title knew that his lot did not meet these requirements. The "grandfather clause" of that ordinance, § 17, subd. 10, would allow lots platted before May 9, 1969, to be developed as long as certain conditions were met. One of those conditions is that—

# EDGEWOOD SHORES

N →

South 323 ft.

PAUL'S LAKE

PUBLIC ROAD

North 99°51' East 1041 ft.

Respondent's Lots

Appellant's Lot

Leroy Roll Lot

William Roll Lot

North 3°40' West 460 ft.

Leroy Roll Property (unplatted)

"* * * state and local statutes, ordinances, rules and regulations relating to sewer and water systems shall be complied with in all respects * * *."

The Isanti County Board of Adjustment issued a building permit to appellant on September 4, 1973. Margaret Johnson appealed to the Isanti County Board of Commissioners and also obtained a temporary restraining order in district court to prevent appellant's construction. The Isanti County Planning Commission recommended the approval of a conditional-use permit on October 16, 1973. Isanti County Zoning Ordinance, § 16, subd. 4.[1] On January 8, 1974, the Isanti County Board of Commissioners denied appellant's application for a conditional-use permit and a variance. The county board found that appellant's proposed use would be injurious to property values in the immediate vicinity and would not comply with sewage disposal statutes, regulations, and ordinances. The board further concluded that property owners of substandard lots are not entitled under § 17, subd. 10—

---

[1] Isanti County Zoning Ordinance, § 16, subd. 4: "No conditional use shall be recommended by the County Planning Commission unless said Commission shall find:

"1. That the conditional use will not be injurious to the use and enjoyment of other property in the immediate vicinity for the purposes already permitted, nor substantially diminish and impair property values within the immediate vicinity.

"2. That the establishment of the conditional use will not impede the normal and orderly development and improvement of surrounding vacant property for uses predominant in the area.

"3. That adequate utilities, access roads, drainage and other necessary facilities have been or are being provided.

"4. That adequate measures have been or will be taken to provide sufficient off-street parking and loading space to serve the proposed use.

"5. That adequate measures have been or will be taken to prevent or control offensive odor, fumes, dust, noise and vibration, so that none of these will constitute a nuisance, and to control lighted signs and other lights in such a manner that no disturbance to neighboring properties will result."

"* * * to the automatic issuance of permits necessary to build upon any lot of record filed in the office of the Register of Deeds on or before May 9, 1969, when such ownership at the time of adoption of the Isanti County Zoning ordinance was in common with ownership of abutting property making it physically feasible to combine such separate lots of record for purposes of issuance of permits to [build] only one single family dwelling upon more than one such separate lot of record."

The court found that § 17, subd. 10, requires that state and local sewer- and water-system statutes, ordinances, and rules and regulations, including the general requirements found in the Isanti County Zoning Ordinance, must be complied with in all respects.[2] It also found that an adequate sanitary sewer facility could not be built on Lot 12.

The district court concluded that the county board's denial of Dedering's application was not arbitrary or capricious as a matter of law, that the board's findings were warranted, and that appellant was not entitled to a conditional-use permit.

The issues presented are:

(1) Was the trial court's finding that appellant's proposed sewage disposal system would not comply in all respects with state and county requirements clearly erroneous?

---

[2] Isanti County Zoning Ordinance, § 17, subd. 10: "Notwithstanding any other provision of this Ordinance, a one-family detached dwelling may be built upon any lot which was of record by deed or plat filed in the office of the Register of Deeds on or before May 9, 1969, and no dwelling existing on said date shall be deemed a non-conforming use by reason of its location on a lot which does not meet the requirements of this Ordinance with respect to lot size, dimensions, or setbacks, provided, however, that, in any event, the side yard and setback requirements of this Ordinance shall be met as nearly as may be, as approved by the Board of Adjustment and provided further that state and local statutes, ordinances, rules and regulations relating to sewer and water systems shall be complied with in all respects, and further provided that any platted lot having less than 10,000 square feet shall be a non-conforming use hereunder."

(2)   Was the trial court correct in holding that the Isanti County Board of Commissioners was not unreasonable, arbitrary, or capricious in refusing to grant appellant exemption under Isanti County Zoning Ordinance, § 17, subd. 10?

■   Appellant asserts that his proposed sewage disposal system complies with state and county statutes, regulations, and ordinances. Lot 12 currently is not served by any public sewer or water facilities. Appellant's proposed septic tank will be approximately 60 feet from respondent Johnson's well and 50 feet from his own well. Appellant admits that Isanti County Zoning Ordinance, § 15, subd. 3(1)(c)(1) and (1)(c)(8), requires that any septic tank be placed at least 50 feet from any domestic water supply and downslope from that supply where feasible. The minimum ordinance requirements are greater where coarse soil formation is present.[3] Appellant argues that he can install a soil-absorption unit and that this unit should be regarded as adequate despite the presence of coarse soil because it is not feasible to place the septic tank downslope from the water-supply well in this case.

The trial court, relying on expert testimony, found that appellant's placement of fill would not adequately meet the ordinance requirement. The trial court concluded that due to the combination of coarse soil conditions present, the fact that the natural

---

[3] Isanti County Zoning Ordinance, § 15, subd. 3(1)(c)(10): "(10) Location of the soil absorption system shall be an unobstructed and preferably unshaded area, and the distances given below shall be the minimum separation between the disposal field and the following:

"(a)   Any water supply well, or buried water suction pipe   50 feet
"(b)   Streams or other bodies of water   150 feet
"(c)   Occupied buildings   20 feet
"(d)   Large trees   20 feet
"(e)   Property lines of buried pipe distributing water pressure 10 feet
"(f)   Other soil absorption systems 3 times the diameter of largest pit (edge to edge).

"When coarse soil formations are encountered, the distance specified in items (a) and (b) shall be increased appropriately."

slope of the terrain placed respondent Johnson's wate. supply well and Paul's Lake downslope from appellant's proposed sewage disposal system, and the unknown subsurface geologic conditions in the vicinity, there was sufficient basis for the determination of the Isanti County Board of Commissioners that the proposed sewage disposal system was inadequate. Appellant questions this finding, but the board, in denying appellant's application for a conditional-use permit and variance, coupled this inadequacy in appellant's proposed sewer system with the fact that the lot involved and adjacent land were not in separate ownership on the date of adoption of the zoning ordinance. The board noted that it was feasible to combine Lot 12 with adjacent land owned by Leroy Roll and thereby comply with the minimum width requirements of Isanti County Zoning Ordinance, § 7, subd. 5(7)(b).

■ Appellant argues that the requirement of separate ownership is not specifically set forth in the ordinance and, therefore, cannot be a condition of the exemption clause, § 17, subd. 10. This argument is unpersuasive. The purpose of exemption clauses in a zoning ordinance is to protect persons who acquire property prior to the adoption of the zoning ordinance from being deprived of the value of their property. 1 Rathkopf, The Law of Zoning and Planning (3 ed. 1974) p. 32-1. Where the owner of a nonconforming undeveloped lot also owns adjacent undeveloped property, however, the owner must combine the two undeveloped lots. 2 Anderson, American Law of Zoning (1968) § 8.49, p. 56. This is particularly appropriate where, as here, the local zoning ordinance is adopted in furtherance of state and county low-density shorelands development policy, Minn. St. 105.485, subd. 1.[4]

---

[4] Minn. St. 105.485, subd. 1: "* * * [I]t is in the interest of the public health, safety, and welfare to provide guidance for the wise development of shorelands of public waters and thus preserve and enhance the quality of surface waters, preserve the economic and natural environ-

Although there is no Minnesota case on the question of separate ownership as a prerequisite for a zoning exemption, a similar fact situation was presented in Macchia v. Board of Appeals, 7 Misc. 2d 763, 164 N. Y. S. 2d 463 (1957), in which a petitioner was denied permission to erect a one-family residence because the lot failed to meet minimum area and front, rear, and side yard requirements. That court held:

"The fact that the building of a residence upon a substandard lot might depreciate the value of neighboring properties is no ground for denying a building permit *if the property has been continuously in single and separate ownership* for a period commencing prior to the adoption of amendment of a zoning ordinance making it substandard. * * *

"The petitioner's difficulty, in this instance, however, is that she has failed to allege that the subject property has been at all times in single and separate ownership, in other words, that neither she nor her predecessors in title since the adoption of the zoning ordinance have owned adjacent property which, combined with the subject parcel, could have formed a single lot conforming to the minimum area requirements." 7 Misc. 2d 766, 164 N. Y. S. 2d 466.

Appellant speculates that the zoning ordinance in Macchia may have required separate ownership. The Macchia court, however, refers to no specific statutory language for its single-ownership requirement. Cases in other jurisdictions have found that the fact that an applicant or his predecessors in title own adjacent property which could be combined to meet a zoning requirement

mental values of shorelands, and provide for the wise utilization of water and related land resources of the state."

Isanti County Zoning Ordinance, § 7, subd. 1: "The intent of the SHORELAND DISTRICT is to guide the wise development and utilization of shorelands of public waters for the preservation of water quality, natural characteristics, economic values, and the general health, safety and welfare of all public waters in the unincorporated areas of the County."

is a legitimate factor in a decision regarding the issuance of variances. The court in Lessner v. Zoning Board of Appeals, 151 Conn. 165, 195 A. 2d 437 (1963), for example, found that a zoning regulation specifying a 120-foot frontage was confiscatory where the owner of a 100-foot frontage could not obtain additional footage.

In denying a conditional-use permit and variance to appellant, who acquired a substandard lot with full knowledge of its deficient size, the Isanti County Board of Commissioners was furthering the purpose of the shorelands provisions of that county's zoning ordinance and the shorelands policy of the state of Minnesota. A county board cannot arbitrarily deny an applicant a variance from local zoning restrictions. See, Zylka v. City of Crystal, 283 Minn. 192, 167 N. W. 2d 45 (1969). However, where, as here, the actions of the county board are based on substantial evidence which it considered in analyzing the proper future course in this important and sensitive land-use field, a court must uphold the board's decision. See, Arcadia Development Corp. v. City of Bloomington, 267 Minn. 221, 125 N. W. 2d 846 (1964). The trial court was correct.

Affirmed.