[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
I. INTRODUCTION
This is an appeal, pursuant to Conn. Gen. Stat.8-8(b), from a decision of the Zoning Board of Appeals of the Watertown Fire District (the "ZBA"). On October 16, 1990, the ZBA voted to deny an application by Bernard Cantillon ("Cantillon"), the appellant herein, to erect a house on a lot that he owns on Greenwood Street in Watertown. Cantillon, who is an "aggrieved person" within the meaning of Conn. Gen. Stat 8-8(a)(1) (b), raises three claims on appeal: (1) that he is entitled to erect the house as a matter of right; (2) that his equal protection rights have been violated because the ZBA has granted other allegedly CT Page 4300 comparable applications involving even smaller lots; and (3) that the ZBA erred in characterizing his application as a variance. For the reasons discussed below, the appeal must be dismissed.
II. FINDINGS OF FACT
The following facts are found from testimony and documents submitted at an evidentiary hearing held on April 24, 1991, and documents previously submitted to the court and contained in its file. Cantillon is the owner of property known as 153 Greenwood Street in Watertown. The exact description of this property — and specifically whether it consists of one or two lots — is the central point of dispute in this case. Both parties rely heavily on the deed history of the property, and an historical description of the relevant deeds is appropriate. The earliest deed in the court's file is one dated September 14, 1925, from Charles W. Atwood to Philias Lampron. That deed conveys the following property:
 A certain tract of land situated at Westbury Park, so called in said town of Watertown, being lots number eighty-one (81) and eighty-three (83) as shown on a map marked "No. 16 Revised Map of a portion of Westbury Park, Watertown, Ct., 1912" now on file at the town clerk's office in said Watertown.
 Said lots are each 50 feet by 140 feet in size lie together and as one tract are bounded:
Northerly 140 feet on lot number 79 of said tract;
Easterly 100 feet on lots 108 and 109 each in part;
Southerly 140 feet on lot 85 of said tract;
 Westerly 100 feet on a proposed highway, known as Greenwood Street. with the right to use said proposed highway for all usual highway purposes in common with grantor and others.
On March 27, 1946, the entire property was conveyed "with all buildings and improvements thereon" by the Watertown Trust Company to Dean H. Wilson and Ethel B. Wilson. (Plaintiffs' Ex. D.) (No deed between 1925 and 1946 has been submitted to the court.) On November 1, 1946, the Wilsons conveyed the entire property to Fernand J. Hebert and Doris Hebert. (Plaintiffs' Ex. C.) On March 9, 1953, CT Page 4301 the Heberts conveyed the entire property, now described as "that certain piece or parcel of land, with all the improvements thereon," to Joseph Bensavage and Maud V. Bensavage. (Plaintiffs' Ex. B.) On December 1, 1989, the administratrix of the estate of Joseph Bensavage conveyed the property, now described as "that certain piece or parcel of land, commonly known as 153 Greenwood Street, with all the improvements thereon," to Cantillon. (Plaintiffs' Ex. A.)
The 1912 Revised Map of Westbury Park referred to on the deeds shows two contiguous lots, numbered 81 and 83, on Greenwood Street. The Watertown Assessor's Map depicts the property as a single undivided tract measuring 100 feet by 140 feet.
It is undisputed that a three family house is located on lot 81. A dilapidated garage on lot 83 was taken down shortly before the hearing. The record contains a photograph of the garage (Plaintiffs' Ex. E) and a 1948 sketch of the property by Mr. Hebert (Defendants' Ex. A), but no photograph showing the entire property. Comments by certain neighbors at the ZBA hearing indicate that there is no visible dividing line between the two lots. (see e.g., ZBA transcript 27.) The 1948 sketch suggests this as well. There is no evidence in the record suggesting that any division exists except on the 1912 map.
The property in question is in a general residence R-GF zone of Watertown. 23.1.1 of the Watertown Fire District Zoning Regulations permits "not more than one. . . dwelling per lot" in such a zone. The word "lot" is defined by Reg. 5.16 as follows:
 A "lot" is defined as a parcel of land which is either 1) owned separately from any contiguous parcel as evidenced by fee conveyance recorded in the land records of the Town of Watertown or 2) is a building lot shown on a subdivision map, approved by the Watertown Planning and Zoning Commission and filed in the Office of the Watertown Town Clerk.
The Zoning Regulations contain certain pertinent requirements for lots in an R-GF district. The minimum lot area
is 7,500 square feet. (23.4.1.) The minimum dimension of a square that can be placed in a lot is 75 ft. (23.4.4.) The minimum setback from the street line is 25 ft. (23.6.1.) Nonconforming lots are regulated by 6.11 as follows:
A parcel of land, which fails to meet the area, CT Page 4302 shape or frontage or any other applicable requirements of these Regulations pertaining to lots, may be used as a lot, and a building or other structure may be constructed, reconstructed, enlarged, extended, moved or structurally altered thereon, provided that all of the following requirements are met:
6.11.1 The use, building or other structure shall conform to all other requirements of these Regulations;
6.11.2 If used for a dwelling, the lot shall contain a minimum area of 4,000 square feet; and
6.11.3 If the parcel fails to meet the area requirements of these Regulations, the owner of the parcel shall not also be the owner of contiguous land which in combination with such parcel that fails to conform would make a parcel that conforms or more nearly conforms to the area requirements of these Regulations pertaining to lots.
Reg. 2.1 provides that, "No building. . . shall be constructed. . . until an Application For Certificate of Zoning Compliance has been approved by the Zoning Enforcement Officer."
On September 12, 1990, Cantillon applied for a Certificate of Zoning Compliance asking permission to erect a single family dwelling on lot No. 83. The application was accompanied by a site plan. On the same day a deputy zoning enforcement officer denied the application because of its failure to comply with the minimum lot area, square dimension, and setback requirements of Reg. 23.4.1, 23.4.4 23.6.1.
Following the decision of the deputy zoning enforcement officer, Cantillon wrote an undated handwritten letter to the chairman of the ZBA. The note is as follows, with the original punctuation and spelling retained:
 I have a house on 153 Greenwood St. in Watertown and I have a building Lot next door that I want to put a house on there is some ledge on the property I would like to come out eaven with the house on 153 Greenwood and then work back to try to avoid Blasting the ledge
On October 4, 1990, the ZBA published a notice that it would, on October 16, 1990, "act on an application for Certificate of Zoning Compliance filed by Bernard Cantillon." CT Page 4303 A public hearing before the ZBA was held on that latter date. Cantillon was present and represented by counsel. (Cantillon is represented by different counsel in the present appeal.) At the outset, considerable confusion was displayed by both Cantillon and the ZBA as to the precise nature of the application before the ZBA. The chairman of the ZBA stated that "the purpose of this hearing is to act on your application, your appeal to this board, based on the rejection of your application for Certificate of Zoning Compliance." (ZBA transcript 6.) Cantillon's counsel, however, stated that, "What we are seeking is a variance of the regulations with regard to putting a foundation on one of those lots that would come closer to the street than is allowed under the new home setback regulations. . . . [W]e're seeking a variance to put the foundation on a legal valid fifty foot existing lot." (ZBA transcript 31.) Cantillon testified in favor of his application, and a number of neighbors testified against it claiming that Cantillon's property was, in fact, a single lot and that an approval of the application would alter the character of the neighborhood and cause crowding, traffic, and parking problems.
Following the hearing a public meeting of the ZBA was convened. (This was still on December 16, 1990.) The complete minutes of that hearing are as follows:
 Mr. Boak [the Chairman] asked for a discussion of merger as it might apply to lot #83 and 153 Greenwood St. (also known as lot 81). Three residents at the Hearing had indicated they believed the lots had been used as one. Mr. Ryan referenced copys [sic] of deeds to the property which had been acquired by Mr. Cantillon in Dec. 1989 from the Estate of Jos. Bensavage, who had owned it since a 1953 purchase from a Mr. Hebert, who in turn had acquired it from a Dean Wilson in `46, prior to any Zoning Regulations. Each deed described the property as 100' by 140'.
 Mr. Stempfle made a motion that the board go on record that merger by use of the two original lots had taken place, based on evidence presented at the Hearing. The motion was seconded by Mr. LeMay. The motion was voted five ayes, zero nays.
 Mr. Stempfle made a motion that the variance be denied, and the action of the Deputy ZBA be affirmed for the reasons stated on the Notice of Decision on Application for Certificate of Zoning compliance. Mr. Massimino seconded the motion. The motion was voted five ayes, zero nays. CT Page 4304
On October 25, 1990, the ZBA published its decision of October 16, 1990. The decision is described as both a denial of Cantillon's appeal from the denial of his application for a Certificate of Zoning Compliance and a separate denial of variances from the Watertown Fire District Zoning Regulations.
Cantillon filed a timely appeal to this court. Service of process was made on November 8, 1990. An evidentiary hearing was held on April 24, 1991.
III. DISCUSSION
 A. CANTILLON'S CLAIM TO A CERTIFICATE OF ZONING COMPLIANCE AS A MATTER OF RIGHT
Cantillon's first, and major, claim on appeal is that he is entitled to a Certificate of Zoning Compliance as a matter of right. He specifically claims that a house like that which he proposes to build could have been built on lot 83 — at least, and this is an important point, lot 83 viewed in isolation — under the zoning regulations in force between 1947 and 1973, when the present zoning regulations were adopted. He argues that because, so he says, the relevant facts concerning his property have not materially changed since that earlier time, his right to build the proposed house on what is now a nonconforming lot endures. This is an ingenious argument, but it must fail given the facts of this case.
The decisive question here is what is Cantillon's "lot" in the first place: is it lot 83 as drawn on the 1912 map or is it lots 81 and 83 combined? The ZBA found that the two lots had merged into one. "The concept of merger of contiguous nonconforming lots in common ownership as an appropriate method to combine nonconforming lots is gaining increasing recognition. See 2 Anderson, American Law of Zoning 9.67 at 307 (3d ed. 1986)." Skelley v. Zoning Board of Review, 569 A.2d 1054, 1056 (R.I. 1990). "Once a local zoning authority has found. . . that there was a merger of lots, the trial court is `restricted to a determination of whether the board's finding of merger was reasonably supported by the record and whether this was a pertinent basis on which to deny the plaintiff's application.' Horn v. Zoning Board of Appeals, 18 Conn. App. 674, 677, 559 A.2d 1174 (1989)." Marino v. Zoning Board of Appeals, 22 Conn. App. 606, 608,578 A.2d 165, cert. denied, 216 Conn. 817, 580 A.2d 58 (1990). Accord, Torsiello v. Zoning Board of Appeals, 3 Conn. App. 47,50, 484 A.2d 483 (1984). CT Page 4305
The record here reasonably supports the ZBA's finding of merger. The court recognized that "contiguous land all owned by the same person does not necessarily constitute a single lot." Kulak v. Zoning Board of Appeals, 184 Conn. 479,482 n. 1, 440 A.2d 183 (1981). On the other hand, "contiguity of land ownership is a feature of lots," Bankers Trust Co. v. Zoning Board of Appeals, 165 Conn. 624,632, 345 A.2d 544 (1974). "While the facts that lots are contiguous and owned by the same person does not mandate a finding of merger. . . it is certainly a relevant factor." Marino v. Zoning Board of Appeals, supra,22 Conn. App. at 609. Moreover, as in Marino, the fact that the land is taxed as one parcel is also relevant to a finding of merger. Id.
Finally, as in Marino, see 22 Conn. App. at 609-10, the history of the property in question is of crucial importance. It appears from the 1912 map in the court's file that in that year most of the Westbury Park section of Watertown was divided into lots that would be substandard under modern zoning regulations. "[T]he fact that a deed description references multiple lots from a map filed in the land records does not compel a finding of an absence of merger." Id. at 609. The deeds submitted to the court establish that the property has been used, described, bought, and sold as one tract since at least 1925 — well before the present zoning regulations came into existence. The fact that there was no single and separate ownership of the respective lots at that time (and for a long time prior to that as well) is both an indication that the present common owner of the lots is not entitled to erect a house on lot 83 as a matter of right — see Dedering v. Johnson,307 Minn. 313, 239 N.W.2d 913, 918-19 (1976); Macchia v. Board of Appeals, 7 Misc.2d 763, 164 N.Y.S.2d 463 (1957) — and a factor (one of many) upon which the ZBA may legitimately rely as a basis for its finding that merger has occurred. The question of whether the long line of common owners of lots 81 and 83 intended them to be merged involves "a factual inference arising from all the circumstances." Hoagland v. Zoning Board of Appeals, 1 Conn. App. 285, 290,471 A.2d 655 (1984). See Molic v. Zoning Board of Appeals,18 Conn. App. 159, 164, 556 A.2d 1049 (1989). The Board's finding of merger is "not reviewable unless it could not reasonably have been drawn." Hoagland, supra,1 Conn. App. at 290. The record here reasonably supports such a finding. This court has no authority to weigh the evidence for itself and determine the issues of fact involved.
B. THE EQUAL PROTECTION CLAIM CT Page 4306
Cantillon next contends that his right to the equal protection of the laws under the state and federal constitutions has been violated because, so he says, the ZBA has on two occasions allowed houses to be built on smaller lots than his. This contention was never made to the ZBA in any way, and no factual record whatsoever was developed there. The record here is completely inadequate to adjudicate the equal protection claim. The courts "do not sit de novo on civil cases for arguments that have not been raised in the agency whose action we are reviewing." Ancona v. City of Norwalk, 217 Conn. 50, 54 n. 6,584 A.2d 454 (1991).
While the standard for review of administrative proceedings must allow for judicial scrutiny of some claims of constitutional error, see Burnham v. Administrator,184 Conn. 317, 322, 439 A.2d 1008 (1981), this can only be in cases where the alleged constitutional violation is fundamental and the record adequately supports the claim. This has been the standard in criminal cases for almost two decades, See, State v. Evans, 165 Conn. 61, 70, 327 A.2d 576 (1973), and no policy reason exists for a more latitudinarian standard in civil cases. Under this standard, an equal protection claim like that raised here is singularly inappropriate for an initial review on appeal since "The commission is not constitutionally required to treat all landowners identically without regard to relevant differences among them." Mario v. Town of Fairfield,217 Conn. 164, 175, 585 A.2d 87 (1991). Much will depend on the particular facts of the cases that are being compared, and in this regard the expertise of the ZBA and its knowledge of the locality are important considerations that must be taken into account. When an equal protection claim like this is raised for the first time on appeal, the court is necessarily asked to decide a fact-specific case in the absence of any factual observations or deliberations by the ae agency charged by law with an expertise concerning these very facts. This the court should not do. "If the facts revealed by the record are insufficient, unclear or ambiguous as to whether a constitutional violation has occurred, we will not attempt to supplement or reconstruct the record, or to make factual determinations, in order to decide the [appellant's] claim." State v. Golding,213 Conn. 233, 240, 567 A.2d 823 (1989).
 C. THE ZBA'S CHARACTERIZATION OF CANTILLON'S REQUEST AS ONE FOR A VARIANCE.
Cantillon's final claim is that the ZBA erred in CT Page 4307 characterizing his application before it as one for a variance. As discussed above, the cryptic nature of Cantillon's handwritten note caused much confusion in the ZBA- Cantillon had, it is true, originally applied for a certificate of zoning compliance, but his note to the ZBA contained no real clue as to the legal path he wished that latter body to follow, and his attorney at the hearing expressly asked for a variance. Under these circumstances, the ZBA followed the prudent course and treated Cantillon's request as both an appeal from the denial of his application for a certificate of zoning compliance and a request for a variance. At the very least, the ZBA's generous decision to treat the request in this bipartite manner cannot now be attacked by Cantillon as error. Any defect here was waived by Cantillon when he appeared at the hearing, represented by counsel, and affirmatively invited the treatment of which he now complains. See Dram Associates v. Planning and Zoning Commission, 21 Conn. App. 538, 544, 574 A.2d 1317 (1990).
IV. CONCLUSION
 For the foregoing reasons, the appeal is dismissed. Dated at Waterbury, this 7th day of May, 1991.
JON C. BLUE JUDGE OF THE SUPERIOR COURT