W. Thomas WHEELER,
et al., Respondents,

v.

CITY OF WAYZATA, Petitioner,
Appellant.

No. C2–93–775.

Supreme Court of Minnesota.

June 23, 1995.

N.W.2d 102 (1975), may be construed as approving challenge of the method used to allocate

Robert L. Meller, Jr., Barbara M. Ross, Best & Flanagan, Minneapolis, and Clifford M. Greene, Greene Espel, Minneapolis, for appellant.

W. Thomas Wheeler, Minneapolis, for respondents.

## OPINION

COYNE, Justice.

On the petition of the defendant City of Wayzata we review a decision of the court of appeals reversing summary judgment in favor of Wayzata. Plaintiffs had sued in the alternative for a declaration of the invalidity of all Wayzata's zoning ordinances and permanent injunction against their enforcement or for mandamus to compel proceedings in eminent domain. We reverse the decision of

disposal costs by declaratory action, it is overruled.

the court of appeals and reinstate the summary judgment entered by the district court.

The dispute revolves about the use of a spit of land projecting into Lake Minnetonka and lying between Gray's Bay on the east and Wayzata Bay on the west. This narrow point of land, which has approximately 1000 feet of shoreline on either side, varies in width from about 33 to 100 feet, the exact width depending on the level of the lake at any given time. Since 1887, when a perpetual right of way four rods wide (66 feet) and running the length of the spit was conveyed to the Hennepin County Board of Commissioners for use as a public road, the land has been a causeway connecting the cities of Wayzata and Minnetonka. Today the road is known as State Highway 101.

Walter J. and Cecile Wheeler, the parents of the individual plaintiffs W. Thomas and Carolyn J. Wheeler, acquired an interest in the causeway in 1953. In 1953 Walter and Cecile Wheeler resided on premises situated in the City of Wayzata and abutting the northerly end of the causeway. In 1956 Wayzata annexed the causeway from the City of Minnetonka. According to the Wayzata zoning ordinance in effect at the time of annexation, the causeway was automatically zoned residential, as was the adjacent homestead of the Wheelers.

Walter and Cecile Wheeler initiated proceedings in 1960 for registration of the title to the causeway and in 1961 Walter requested permission to subdivide the adjoining homestead parcel into two lots. At a regular meeting of the Wayzata Planning Commission on August 15, 1961 (continued from August 8, 1961 for lack of quorum) on motion duly made and seconded, the following resolution was unanimously adopted:

The Planning Commission approves and recommends approval of the subdivision of Lot A Carpenter's Point as shown on the enclosed plat, subject to the following conditions: If Lot B is ever sold, all rights that Mr. Wheeler has to the property on the point be attached to Lot B and if it is possible to combine Lot B and the Causeway, they should be combined.

■ On August 24, 1961 Walter Wheeler wrote this letter addressed to the mayor and the members of the city council and of the planning commission acknowledging those conditions:

Your records will show that on August 15, 1961, the Planning Commission acted on a request to permit the division of the property at this address [655 Bushaway Road], more appropriately described by and shown on the Surveyor's Plat already filed in the City Hall.

It was requested that I write this letter to assure the Planning Commission and the Council that it is my intention to combine the southerly portion of the property with the northerly portion of Gray's Bay Causeway. The northerly portion of Gray's Bay Causeway is in process of being registered in so-called "Torrens" proceedings, Application No. 14821. When these proceedings are successfully concluded, as in my opinion they will be, this causeway strip will be added to the adjoining lot, and it is my intention that the causeway strip and adjoining lot will constitute a single tract upon which a residence will one day become erected.

Based on the recommendation of the planning commission, the Wayzata City Council approved Wheeler's subdivision request at a meeting in the Council Chambers on September 5, 1961.[1]

Despite Wheeler's expressed intention of joining the causeway with the adjacent lot on completion of the Torrens proceeding, the proceeding was either dismissed or abandoned prior to completion, and when Walter and Cecile Wheeler sold the adjacent lot, Lot B, in 1969, after a house had been built there, the causeway was not included in the transaction. Instead, the Wheelers retained the causeway property until August 7, 1985 when Walter and Cecile conveyed the parcel by

---

1. We have taken judicial notice of the minutes of the August 15, 1961 meeting of the Wayzata Planning Commission and of the September 5, 1961 meeting of the Wayzata City Council. We are constrained, however, to comment on both the failure of the defendant to support its motion for summary judgment with appropriate documentation and on the efforts of both parties to supplement the record on appeal.

quit claim deed to their children, W. Thomas and Carolyn J. Wheeler.[2] Thomas Wheeler asserts that the reason for conveyance of the causeway to Carolyn and Thomas was to permit them to carry out a plan to develop the causeway property as a commercial marina. However, the causeway lies in a district zoned R–1A, low density single family residence district.[3]

On October 24, 1985, after Emerson Property Company had been incorporated, Thomas and Carolyn Wheeler each conveyed by warranty deeds in which their respective spouses joined, an undivided one-half interest in the causeway to Emerson Property Company in exchange for one-half of the company's shares of capital stock and a promissory note in the amount of $50,000. The note was to be paid from profits realized from operation of the planned marina.

Thomas Wheeler has stated that as early as 1985 the Wayzata City Manager advised him that Wayzata did not want any development of the hitherto undeveloped causeway. Nevertheless, after acquiring the causeway, Emerson Property Company secured a permit from the Minnesota Department of Transportation for a driveway access to State Highway 101 and constructed a 100– to 150–foot semi-circular blacktopped driveway. Pursuant to a permit from the Minnehaha Creek Watershed District Emerson installed riprap for protection against erosion, and further improved the tract with a dock which houses a 26–foot Sea Ray Weekender used by Thomas Wheeler for business and pleasure.

At some point Emerson applied for rezoning of the causeway to commercial so that it could develop a commercial marina on the Wayzata Bay side of the causeway. The Wayzata City Manager regarded the application as defective and requested additional information. Emerson's only response was Thomas Wheeler's contention that additional information was unnecessary for commencement of the rezoning application process.

In April of 1990 Emerson Properties petitioned for the detachment of the causeway from the City of Wayzata, and a hearing on that petition was held on June 25, 1990. On or about August 13, 1990, before the Minnesota Municipal Board ruled on the petition and while the matter was pending, the plaintiffs commenced this action.

Following denial of the detachment petition, the district court granted Wayzata's motion for summary judgment. On appeal from the judgment the court of appeals held that the self-imposed hardship rule was not applicable to an intra-family transfer or to a transfer from incorporators to the corporation and that the taking claim was not ripe. *Wheeler v. City of Wayzata,* 511 N.W.2d 39, 43 (Minn.App.1994). Nevertheless, the court of appeals declared that because the zoning ordinance denied all uses but residential "and nature bars that * * * the ordinance does not permit [plaintiffs] a reasonable use of their property." *Id.* at 42.

Although we agree that because the plaintiffs have neither perfected their application for rezoning of the causeway nor applied for a variance, the taking claim is not ripe for review, we are of the opinion that the various actions of the plaintiffs' predecessors in title created the hardship of which plaintiffs complain. Consequently, Wayzata's otherwise valid zoning ordinance is not constitutionally invalid as applied here and the plaintiffs have not and cannot demonstrate that the zoning ordinance has caused a hardship that amounts to a taking of their property.

The record before us does not disclose how the causeway was zoned in 1953 when it was a part of the City of Minnetonka and ac-

2. Prior to 1985 the causeway had been exempted from real estate taxes on the erroneous assumption that it was state-owned land. When the error was discovered, Thomas and Carolyn Wheeler paid the taxes from 1978 and by June 11, 1991 had paid in full the real estate taxes for the years 1978 through 1990.

3. Although the plaintiffs contend that the causeway was not part of any zoning district after annexation by Wayzata, the certificate of real estate value signed by Thomas Wheeler and filed in connection with Carolyn Wheeler's conveyance of an undivided one-half interest in the causeway to Emerson Property Company states that the property is zoned R–1A; the acknowledged zoning is inconsistent with the proposed use.

quired by Walter and Cecile Wheeler. When, however, the City of Wayzata annexed the causeway in 1956, it was automatically zoned residential pursuant to the 1946 zoning ordinance then in effect. The 1946 ordinance provided three kinds of use districts: Residential, Multiple Dwelling or Commercial. Residential uses were limited to one- or two-family dwellings and country estates, country clubs, golf courses, polo fields, public libraries, churches and schools and related buildings, farming, forests, conservatories and greenhouses, and parks and public recreation buildings. The 1946 ordinance also set out area regulations and various setback requirements.

From time to time thereafter the zoning ordinance was amended. For example, in 1959 the residential district category was divided into Residential "A" and Residential "B" districts. Both "A" and "B" districts were limited to single one-family dwellings, country clubs and private golf courses, polo fields, and noncommercial farming and horticultural nurseries and conservatories. Private forests, private recreation grounds, and private stables were permitted in Residential "A" districts; and public libraries, churches, schools, and parks and public recreation buildings were still permitted uses in Residential "B" districts.

When the zoning ordinance was again revised on October 1, 1985, Wayzata was divided into 15 districts—seven of them types of residential districts varying from R–1A, Low Density Single Family Residential District to R–6, High Density Multiple Residence District. The R–1A district provided a low density residential district for large and estate-type properties. Private recreational facilities were permitted as conditional uses in R–1A districts.

Although it is, of course, true that neither the causeway property nor any other property was formally zoned R–1A until after the property had been conveyed to Thomas and Carolyn Wheeler and shortly before they conveyed it to Emerson, it is also true that the causeway property has been zoned residential ever since Wayzata annexed it in 1956. The conformation, situation and topography of this very narrow strip of land, espe-

cially in view of the 66–foot highway easement with which it is burdened over its entire length, amply demonstrate its lack of capacity to support any structure of substance—in 1953 when the senior Wheelers acquired it, as well as at all times since. Succinctly put, it is the nature of this property that precludes most of the uses to which land is put, not the zoning ordinance.

If the annexation of the causeway by Wayzata in 1956 subjected the causeway property to a zoning classification more restrictive than that previously imposed by the City of Minnetonka—a speculation unsupported by the record here—the senior Wheelers never objected to the residential classification.

It is, in fact, the activities of Walter and Cecile Wheeler in 1961 and thereafter which prompt us to conclude that neither they nor their successors in interest may complain that the property is zoned residential. It was they, when they conveyed Lot B in 1969, who failed to convey their interest in the contiguous causeway to the purchasers of Lot B as they had originally contemplated and the city council required. Instead they separated the ownership of this patently substandard parcel from the ownership of the adjacent property with full knowledge that this sliver of land could never be used in compliance with the Wayzata zoning ordinance except for private recreation grounds or noncommercial farming or gardening. Only after the causeway property had remained undeveloped for another 16 years, did the senior Wheelers then convey it to their children purportedly for its development as a commercial marina, and a short time later Thomas and Carolyn conveyed the property to Emerson.

Taking the rather curious position that because the county assessor had failed until 1985 to assess real estate taxes on the causeway on the erroneous assumption that it was state-owned, the causeway was unzoned, Emerson began improving the property and using it for private recreational purposes—a conditional use permitted by the zoning ordinance then in force. If, as the court of appeals concluded, the self-imposed hardship rule was not invoked by the intra-family transfer or the transfer to the grantors' cor-

poration, then the corporate grantee is bound by the conduct of the family predecessor in title.

■ Here Walter and Cecile Wheeler held the causeway for almost 30 years without challenging the inclusion of this parcel in a district zoned residential. That they intended to combine the causeway with the adjacent parcel may explain their failure to seek rezoning during the first few years after annexation by Wayzata, but their subsequent failure to request rezoning is totally unexplained. Had Walter and Cecile Wheeler asserted a claim of unconstitutional taking instead of conveying the property to their children in 1985, we have no doubt that laches would have barred the claim. Prejudice "to those who have equities to be protected"[4] is not always essential for application of laches but is significant in the determination whether the delay was reasonable. *Aronovitch v. Levy*, 238 Minn. 237, 242–43, 56 N.W.2d 570, 574 (1953). A 30–year delay inevitably prejudices the owners of nearby properties, who have relied on the present condition and use of the causeway in making decisions about the sale, purchase, and development of their properties. As we noted in *Filister v. City of Minneapolis*, 270 Minn. 53, 60, 133 N.W.2d 500, 505 (1964), *cert. denied*, 382 U.S. 14, 86 S.Ct. 47, 15 L.Ed.2d 10 (1965):

> [I]t was not only incumbent on the plaintiffs to show that the ordinance was confiscatory, but they had the burden of proving by clear and convincing evidence that the relief they sought would not result in any substantial detriment to neighboring property improved in reliance on the validity of the ordinance.

Certainly, Walter and Cecile Wheeler "remained passive when they had a duty to act," and their successors in interest are in no better position to complain. *Id.*

More to the point is that the hardship was self-created by the failure of the senior Wheelers to observe the requirement on which the planning commission conditioned approval of the division of their homestead parcel: that if the newly created Lot B should ever be sold, the Wheelers' interest in the causeway should be conveyed with Lot B. This is not to suggest that Walter Wheeler misrepresented his intention with respect to merging Lot B and the causeway into a single tract on completion of registration of the title to the causeway. It is simply to point out that as long as the causeway and Lot B were under common ownership, the use of the causeway as a private recreational facility and an extension of the shoreline of the adjoining residence enhanced the value of both parcels and conformed with the residential zoning requirements as they have from time to time been in force.[5] Only after the common ownership of the two parcels was severed did the unsuitability of the causeway for residential purposes assume importance.

In a factually similar case the New York Court of Appeals ruled that the hardship was self-created, providing ample basis for denial of a variance. *In the Matter of 113 Hillside Avenue Corp. v. Zaino*, 27 N.Y.2d 258, 317 N.Y.S.2d 305, 265 N.E.2d 733 (1970). The corporation's grantor—a brother of a half owner of the corporation—owned a large residential parcel which he subdivided into three smaller lots. Two of the lots met the zoning area and frontage requirements, but the third lot (Lot 14), which the court described as being shaped like a "pot handle" had only one-third the required frontage. *Id.* Lot 14 was bordered on three sides by municipally owned property and on the fourth side by Lots 15 and 16. The grantor conveyed Lots 14 and 15 to the corporation, whose application for a variance for Lot 14 was denied after it had sold Lot 15.

Reiterating its remark that "a municipality has 'a legitimate interest in maintaining and preserving the character of a particular area,'" the New York court held that because the character of the area in the vicinity of Lot 14 would be adversely affected by the grant of the requested variance, the corpora-

---

**4.** *Briggs v. Buzzell,* 164 Minn. 116, 120, 204 N.W. 548, 549 (1925).

**5.** The plaintiffs rely on the failure to complete the registration of the title to the causeway, with the resultant inability to combine Lot B and the causeway into a single tract to excuse the failure to convey the causeway to the purchasers of Lot B. There is, of course, no bar to the contemporaneous conveyance of the two parcels, one registered land and one abstract property.

tion had to demonstrate that the hardship caused by the zoning ordinance is such that the corporation was deprived "of any use of the property to which it is reasonably adapted, and that, as a result, the ordinance amounts to a taking of [its] property." *Id.* 27 N.Y.2d 258, 317 N.Y.S.2d at 308, 265 N.E.2d at 735 (quoting *Matter of Fulling v. Palumbo,* 21 N.Y.2d 30, 286 N.Y.S.2d 249, 253, 233 N.E.2d 272, 274 (1967)). The corporation had failed to meet its burden, for it could not be satisfied solely by proof of financial hardship—especially where the hardship was caused by the corporation's declination to convey Lot 14 together with Lot 15 and to use Lot 14 as an accessory yard area.

Similarly, in *Filister,* 270 Minn. at 60, 133 N.W.2d at 505, where property had been zoned for one- and two-family dwellings since 1924 without objection by plaintiffs or their unrelated predecessors in interest, this court held that the plaintiffs had the burden of showing not only that the ordinance deprived the property of all practical use but also that the relief they sought would not result in any substantial detriment to neighboring property improved in reliance on the validity of the ordinance.

We are of the opinion, however, that the method by which Emerson acquired the causeway property—an intra-family transfer followed by transfer to the transferor's wholly owned corporation—does not alter the applicability or effect of the self-imposed hardship role. For example, in *Dedering v. Johnson,* 307 Minn. 313, 239 N.W.2d 913 (1976), Isanti County's denial of a variance for a substandard lot was affirmed. The plaintiff's father-in-law had platted Lots 12, 13 and 14. In 1973 the father-in-law conveyed Lot 12 to his son and Lot 14 to the plaintiff, retaining Lot 13. Citing 2 Anderson, *American Law of Zoning* § 8.49, at 56 (1968), we there stated that an owner of a nonconforming undeveloped lot who also owns adjacent undeveloped property must combine the two undeveloped lots. *Id.* at 320, 239 N.W.2d at 918. We noted that cases in other jurisdictions have found that "the fact that an applicant or his predecessor in title own adjacent property which could be combined to meet a zoning requirement is a legitimate factor in a decision regarding the issuance of variances, and we held that denial of a conditional use

permit and variance to the plaintiff, who acquired a substandard lot with full knowledge of its deficient size, furthered the purpose of the zoning ordinance and the shorelands policy of the State of Minnesota. *Id.* at 321–22, 239 N.W.2d at 919.

Similarly, the proximity of a fine residential district to the tract on which Modern Box Makers, Inc. operated a manufacturing establishment militated against the company's claim that the zoning ordinance was invalid. We observed that to remove the tract at issue from the district zoned residential and to permit commercial or manufacturing establishments would be a grave injustice to the neighborhood residents. *State v. Modern Box Makers, Inc.,* 217 Minn. 41, 43, 13 N.W.2d 731, 734 (1944). Commenting that the owner in 1929, when the zoning ordinance was enacted, had never objected to it, the court affirmed conviction of violation of the zoning ordinance and held that the box company, which had purchased the property in 1943, was "in no position, equitable or otherwise, to claim that an injustice is being done it." *Id.* at 49, 13 N.W.2d at 735.

For the foregoing reasons we reverse the decision of the court of appeals and reinstate the summary judgment entered in favor of the City of Wayzata.

Reversed; summary judgment reinstated.