DECISION
Before this Court is an appeal from a decision of the Zoning Board of Review of the Town of Warren (Board). In its decision, the Board upheld the determination of the Zoning Officer[1] that the substandard lots of Mr. Fisher (Appellant) had automatically merged by operation of law. The Appellant seeks reversal of the Board's decision. Jurisdiction is pursuant to G.L. 1956 § 45-24-69.
 I Facts and Travel
The Appellant owns two adjacent lots of record in the Town of Warren: Lots 21 and 23 on Tax Assessor's Plat 13C. Both lots are in an R-10 zone, which requires, inter alia, minimum lot frontage of 90 feet and minimum lot area of 10,000 square feet. See Warren Zoning Ordinance art. XIII, § 32-77 (Sept. 9, 2003). Both lots meet the required *Page 2 
minimum lot area of 10,000 square feet, with Lots 21 and 23 having 29,240 and 41,900 square feet, respectively. However, neither lot meets the minimum lot frontage of 90 feet, with Lots 21 and 23 having 15 and 10 feet, respectively.
Due exclusively to a lack of sufficient frontage, both lots are substandard lots of record. In shape, each lot resembles a frying pan, with the narrow handle portion of the lots abutting the street. The respective frontages of each lot are noncontiguous, but are 104.36 feet apart due to the presence of Tax Assessor's Plat 13C, Lot 24. Currently, Lot 21 contains two single-family dwellings, while Lot 23 remains vacant.
In a letter dated November 12, 2007, the Appellant's attorney requested that the Zoning Officer determine whether Lots 21 and 23 merged by operation of law pursuant to § 32-82 of the Warren Zoning Ordinance (Ordinance). The Appellant ultimately wants to obtain a building permit to build a single-family home on Lot 23. In a letter dated November 26, 2007, the Zoning Officer replied as follows:
 Your client, Mr. Fisher, owns or has an agreement to own lots 21 and 23. . . . The merger requirement applies "to all adjacent land under the same ownership. . . ." Lot 21 has fifteen feet of frontage and Lot 23 has ten feet of frontage. Neither of these lots meets the minimum lot frontage requirement in an R-10 zoning district. Per Section 32-82 he [sic] lots merge resulting in a lot with twenty-five feet of frontage. Although not contiguous, the frontage may be added together yet the lot still does not meet the ninety feet minimum lot frontage requirement in an R-10 zoning district. A Special Use Permit from the Warren Zoning Board is required to "unmerge" these lots in order to develop lot 23. Letter from William J. Nash, Jr., Zoning Officer, Town of Warren, to Bruce H. Cox, Esq., Slepkow, Slepkow Associates, Inc. (Nov. 26, 2007). *Page 3 
The Appellant appealed the Zoning Officer's determination to the Board pursuant to § 45-24-64. A duly noticed hearing was held on February 20, 2008.[2] In a decision dated April 9, 2008, the Board upheld the Zoning Officer's determination finding that "[i]n spite of the fact that the frontages of lot 21 and 23 were not contiguous, the merger of the two lots reduced the nonconformity of frontage of lot 23 from 80 feet to 65 feet. The merger thereby reduced the nonconformity of frontage." (Bd.'s Dec. ¶ 7.)
On April 28, 2008, the Appellant filed a complaint in this Court timely appealing the decision of the Board. On May 7, 2008, the Appellant filed an amended complaint. An audio recording of the zoning board hearing has been provided.
 II Standard of Review
The Superior Court's review of a zoning board decision is governed by § 45-24-69(d), which provides that:
 The court shall not substitute its judgment for that of the zoning board of review as to the weight of the evidence on questions of fact. The court may affirm the decision of the board of review or remand the case for further proceedings, or may reverse or modify the decision if substantial rights of the appellant have been prejudiced because of findings, inferences, conclusions or decisions which are:
 (1) In violation of constitutional, statutory, or ordinance provisions;
 (2) In excess of the authority granted to the zoning board of review by statute or ordinance;
 (3) Made upon unlawful procedure;
 (4) Affected by other error of law; *Page 4 
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence of the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.
When reviewing a decision of a zoning board, a justice of the superior court may "not substitute [his or her] judgment for that of the zoning board if [he or she] conscientiously find[s] that the board's decision was supported by substantial evidence." Apostolou v. Genovesi,120 R.I. 501, 507, 388 A.2d 821, 825 (1978). "Substantial evidence . . . means such relevant evidence that a reasonable mind might accept as adequate to support a conclusion, and means [an] amount more than a scintilla but less than a preponderance." Lischio v. Zoning Bd. of Review of N.Kingstown, 818 A.2d 685, 690 n. 5 (R.I. 2003) (quoting Caswell v. GeorgeSherman Sand Gravel Co., 424 A.2d 646, 647 (R.I. 1981)). While the reviewing court must give deference to the zoning board on questions of fact, questions of law are reviewed de novo. See Pawtucket TransferOperations, LLC v. City of Pawtucket, 944 A.2d 855, 859 (R.I. 2008).
 III Merger
The sole issue on appeal is a question of law: whether Lots 21 and 23 merged by operation of law under § 32-82 of the Ordinance. The Zoning Officer and the Board found that Lots 21 and 23 had merged. The Appellant argues that the lots had not merged. This Court will review such question of law de novo. See Pawtucket Transfer Operations,LLC, 944 A.2d at 859.
It is well-settled that the scope of nonconforming uses should be strictly construed because they are viewed "as detrimental to a zoning scheme, and the overriding public policy of zoning . . . is aimed at their reasonable restriction and eventual elimination." *Page 5 Town of Richmond v. Wawaloam Reservation, Inc., 850 A.2d 924, 934-35
(R.I. 2004). Accordingly, "[m]erger generally requires the combination of two or more contiguous lots of substandard size that are held in common ownership in order to meet the minimum-square-footage requirements of a particular zoned district." R.J.E.P. Assocs. v.Hellewell, 560 A.2d 353, 355 (1989) (citing Dedering v. Johnson, 307 Minn. 313, 239 N.W.2d 913 (1976)); see also Skelley v. Zoning Bd. ofReview of the Town of S. Kingstown, 569 A.2d 1054, 1056 (R.I. 1990) (citing 2 Anderson, American Law of Zoning § 9.67 at 307 (3d ed. 1986)).
Furthermore, "[s]ubstandard contiguous lots cannot be developed as individual nonconforming lots unless the landowner applies for a variance or an exception." Id. However, where a "landowner owns any adjacent lots that, if combined, would satisfy the square-footage requirements, then the landowner is not entitled to the exception."Id. at 356. As a result, "[t]he landowner therefore must merge the lots to form a single parcel of land that will meet the area requirements."Id.
Merger, or the combining of substandard lots, is "a valid zoning mechanism governed by the provisions of G.L. 1956 (1988 Reenactment) chapter 24 of title 45." Brum v. Conley, 572 A.2d 1332, 1334 (R.I. 1990) (citing McKendall v. Town of Barrington, 571 A.2d 565, 567 (R.I. 1990)). Pursuant to § 45-24-38 cities and towns are authorized to enact zoning ordinances to govern the merger of substandard lots. See id. Merger occurs by operation of law. See Roland F. Chase, Rhode Island ZoningHandbook § 82 (2d ed. 2006). The purpose of merger provisions in zoning ordinances is "to decrease congestion in the streets and to prevent overcrowding of land by limiting the number of new dwellings built in the residential districts." Brum, 572 A.2d at 1334; *Page 6 
§ 45-24-30 (providing general purposes of ordinances). "A controversy involving the issue of merger must be resolved by analyzing the language in the particular ordinance and the specific factual scenario in that dispute." Skelley, 569 A.2d at 1057.
The Town of Warren has enacted a merger provision, § 32-82. In pertinent part, § 32-82 states, "where adjacent land is in the same ownership, such lot shall be combined with adjacent land to form a lot of the required dimensions and area, or to decrease the degree ofnon-conformity where the required area and dimensions cannot beachieved." (Emphasis added). It is not disputed that Lots 21 and 23 are adjacent lots in the same ownership or that merging the two lots will not "form a lot of the required dimensions and area."[3] However, at issue is whether merging Lots 21 and 23 will "decrease the degree of non-conformity," with the Board finding that merger will decrease the degree of non-conformity, and the Appellant arguing that it will not.
The Board upheld the Zoning Officer's determination that merging Lots 21 and 23 would decrease the degree of non-conformity from 80 (Lot 23) to 65 because the merged lot would have 25 feet of frontage, as opposed to Lot 23's 10 feet of frontage. The Appellant argues that there is no legal basis to support the Zoning Officer's determination that the noncontiguous frontage of Lots 21 and 23 should be added together to arrive at 25 feet of frontage. Thus, the Appellant argues that merging the lots will not "decrease the degree of non-conformity" because noncontiguous frontage should not be added together.
Section 45-24-31(42) of the Rhode Island General Laws defines "Lot Frontage" as "[t]hat portion of a lot abutting a street. A zoning ordinance shall specify how *Page 7 
noncontiguous frontage will be considered with regard to minimum frontage requirements." With respect to Lot Frontage, the Ordinance provides that it is "[t]hat portion of a lot abutting a street. A zoning ordinance shall specify how noncontiguous frontage will be considered with regard to minimum frontage requirements." Section 32-130. The Ordinance recites verbatim the statutory definition of "Lot Frontage," including the directive to "specify how noncontiguous frontage will be considered." In the Ordinance's not specifying how to treat noncontiguous frontage, the Appellant argues that there is an ambiguity in the Ordinance. Consequently, the Appellant argues that § 32-130 of the Ordinance should be interpreted as not adding noncontiguous frontage because such an interpretation would be in favor of the landowner. The Board agrees that § 32-130 is ambiguous, but argues that interpreting the section as adding noncontiguous frontage would be in the landowner's favor.
This Court reviews issues of statutory interpretation de novo.See Palazzolo v. State ex rel. Tavares, 746 A.2d 707, 711 (R.I. 2000). It is well settled that "the rules of statutory interpretation apply equally to the construction of an ordinance." Mongony v. Bevilaqua,432 A.2d 661, 663 (R.I. 1981). Where the language of a statute or ordinance "[']is clear on its face, then the plain meaning of the statute must be given effect' and this Court should not look elsewhere to discern the legislative intent." Ret. Bd. of Employees' Ret. Sys. v. DiPrete,845 A.2d 270, 297 (R.I. 2004) (quoting Henderson v. Henderson, 818 A.2d 669,673 (R.I. 2003)). This means that when "a statutory provision is unambiguous, there is no room for statutory construction and [this Court] must apply the statute as written." Id. *Page 8 
Under Rhode Island law, courts "resolve all doubts and ambiguities contained in the zoning laws in favor of the landowner because these regulations are in derogation of the property owner's common-law right to use her property as she wishes." Denomme v. Mowry, 557 A.2d 1229,1231 (R.I. 1989) (citing City of Providence v. O'Neill, 445 A.2d 290,293 (R.I. 1982)). The Supreme Court has also stated that, "[w]henever the language of a statute or ordinance is susceptible of more than one reasonable interpretation, that interpretation will be adopted which will best carry out its evident purpose." Taft v. Zoning Bd. of Reviewof the City of Warwick, 75 R.I. 117, 121, 64 A.2d 200, 201 (1949).
In Rhode Island, "[o]ur process of statutory construction further involves a `practice of construing and applying apparently inconsistent statutory provisions in such a manner so as to avoid the inconsistency.'" Kells v. Town of Lincoln, 874 A.2d 204, 212 (R.I. 2005) (quoting Montaquila v. St. Cyr, 433 A.2d 206, 214 (R.I. 1981)). Furthermore, where "the provisions of a statute are unclear or subject to more than one reasonable interpretation, the construction given by the agency charged with its enforcement is entitled to weight and deference, as long as that construction is not clearly erroneous or unauthorized." Labor Ready Ne., Inc. v. McConaghy, 849 A.2d 340, 345
(R.I. 2004). However, "[t]his Court will not construe a statute to reach an absurd result." State v. Flores, 714 A.2d 581, 583 (R.I. 1998) (quoting Kaya v. Partington, 681 A.2d 256, 261 (R.I. 1996)).
Here, § 32-130 of the Ordinance, which defines lot frontage, is ambiguous because it is unclear whether noncontiguous frontage should be added in determining minimum lot frontage. See § 45-24-31(42). Because § 32-130 is ambiguous, such *Page 9 
ambiguity must be resolved "in favor of the landowner." SeeDenomme, 557 A.2d at 1231. Here, it is not in the landowner's favor to meet or even to approach the minimum lot frontage requirement of 90 feet. It is in the landowner's favor to keep the lots separate in order to build a home on Lot 23. However, at the same time, a statute may not be interpreted to create an absurd result. See Flores, 714 A.2d at 581
(citation omitted).
Most towns and cities in Rhode Island do not add noncontiguous frontage when determining minimum lot frontage, but rather have ordinances which state, "where all lot frontage is not contiguous, thenonly the largest single portion of such lot frontage will beconsidered with regard to minimum frontage requirements." See,e.g., The Zoning Ordinances of the City of East Providence, the Town of Cumberland, the Town of Little Compton, the City of West Warwick (emphasis added). To date, no town or city has adopted an ordinance stating that noncontiguous frontage should be added together to determine minimum lot frontage.
The principal purpose of a frontage requirement is to ensure reasonable access to the lot from the street for fire and other emergency vehicles. See 3 Arden H. Rathkopf, The Law of Zoning andPlanning, § 53:22 (2008). In its Decision, the Board found that it had never issued a building permit for a lot with less than 20 feet of frontage because of public safety concerns. (¶ 10.) For example, the largest single portion would have to be large enough to provide access from the street to emergency vehicles. To avoid construing the zoning ordinance "to reach an absurd result," see Flores, 714 A.2d at 583, and to interpret it in the landowner's favor, this Court finds that under the facts of this case frontage is defined as the largest single portion of a lot which abuts a street. *Page 10 
However, even if frontage is the largest single portion, Lots 21 and 23 still merge by operation of law because the merger of Lots 21 and 23 will still decrease the degree of non-conformity. Individually, Lot 23 had 10 feet of frontage, and Lot 21 had 15 feet of frontage in a zone which required 90 feet. By merging Lot 23 with Lot 21, the new merged lot will have two noncontiguous portions of frontage: 10 feet and 15 feet. Because 15 feet is larger than 10 feet, the new lot will have frontage of 15 feet. This merger will decrease the degree of non-conformity of Lot 23 from 80 feet to 75 feet, because whereas before Lot 23 had 10 feet of frontage, now the merged lot has 15 feet of frontage. See Warren Zoning Ordinance art. XIV, § 32-82 (Sept. 9, 2003). Lots 21 and 23 merged by operation of law. Accordingly, the Board's decision concluding that Lots 21 and 23 merged by operation of law is not affected by error of law and is not clearly erroneous.
This conclusion is consistent with the underlying purpose of merger which is "to decrease congestion in the streets and to prevent overcrowding of land by limiting the number of new dwellings built in the residential districts." See Brum, 572 A.2d at 1334. Lot 21 already contains two houses. A third house on an adjacent lot with merely 10 feet of frontage would increase congestion and overcrowding. Seeid. Furthermore, the purpose of merger is better served because it is preferable to have one lot with insufficient frontage than two lots with insufficient frontage.
 IV Conclusion
After review of the entire record, this Court finds that the decision of the Board is not affected by error of law or in violation of ordinance provisions. Substantial rights of *Page 11 
the Appellant have not been prejudiced. Accordingly, this Court affirms the decision of the Board.
Counsel shall submit the appropriate judgment for entry.
[1] In its decision, the Board refers to the Zoning Officer as the "Building Official" and the "Building Inspector."
[2] The Board questioned the Appellant; Mr. Bruce Cox, Appellant's Attorney; and Mr. Paul Ryan, Warren's Town Solicitor. As the Board was deciding only a legal issue, only legal arguments were presented.
[3] Separately, each lot already exceeds the minimum area requirements in an R-10 zone. Neither side argues that merging the lots will create the required frontage of 90 feet.